In the

# United States Court of Appeals
## For the Seventh Circuit

No. 10-3338

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

MARLON K. SPEARS,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 2:08 CR 136—**Philip P. Simon**, *Chief Judge*.

ARGUED JUNE 7, 2011—DECIDED MARCH 8, 2012

Before EASTERBROOK, *Chief Judge*, and BAUER and WILLIAMS, *Circuit Judges*.

WILLIAMS, *Circuit Judge*. On August 1, 2008, a magistrate judge issued a search warrant for the home of Marlon K. Spears, which law enforcement officers executed five days later. Spears was arrested and charged with possessing 100 or more marijuana plants with intent to distribute, being a felon in possession of a firearm, and maintaining a place for the manufacture and distribution of marijuana. He filed multiple motions

to suppress the evidence obtained from the search, challenging numerous statements made in the affidavit accompanying the warrant application, including: (1) statements about finding a marijuana stem during a "trash pull"; (2) the existence of PVC piping at Spears's home; (3) the affiant's statements that she "received information from" the Northern Indiana Public Service Company ("NIPSCO") about Spears's power usage; and (4) statements made about Spears's criminal history, namely, that he had one in the state of Indiana. The district court eventually conducted a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). After hearing testimony, the district court found that the warrant did not contain any material false statements that were made intentionally, and denied the motion. The court also found that the warrant did not otherwise lack probable cause.

Spears was convicted of all three counts following a jury trial. He now appeals, arguing that the district court erred in denying his *Franks* motion to suppress evidence. We find that the district court did not clearly err in finding no *Franks* violation with respect to the statements made about the marijuana stem discovered in the trash and the existence of piping at Spears's home. We decline to reach Spears's arguments regarding the inclusion of the electricity usage information and his criminal history because we find that even if those portions are stricken, the remaining elements of the affidavit support a finding of probable cause. We therefore affirm Spears's conviction.

## I. BACKGROUND

### A. The Warrant Affidavit and Search of Spears's Residence

Nicole Duncanson is a Hammond, Indiana police officer deputized as a federal agent. On August 1, 2008, she submitted an application and affidavit in support of a search warrant for the home of Marlon K. Spears to the United States District Court for the Northern District of Indiana. The affidavit stated that on July 23, 2008, a confidential informant, whom Duncanson had never met, called her and stated that Spears had a marijuana growing operation at his home. The informant stated that he or she had been in the basement of Spears's home and observed multiple rooms of marijuana plants, a water irrigation system, multiple high intensity growing lights, multiple electronic devices in and around the operation, fertilizer, growing mediums, and PVC piping routed from the basement to the exterior of the residence. The informant also told Duncanson that the PVC piping on the outside of the house was routed out from the basement and spray painted black. Duncanson ran a search on Marlon Spears, which revealed that he lived at the residence. Duncanson put in her sworn affidavit that she ran a criminal history check on Marlon Spears, "and found that he has a criminal history in the state of Indiana."

The affidavit also stated that on the morning of July 31, 2008, Duncanson met with two Indiana State Troopers (Jason Sample and Gerald Michalak) who had investigation experience with marijuana grow operations. Among

other information they provided, the troopers informed Duncanson that it was common in marijuana grow operations to discard the stems of the marijuana plants. That same morning, Duncanson, the two troopers, and Detective Adam Clark of the Hammond Police Department obtained abandoned trash that had been placed in a public alley directly south outside Spears's home. The affidavit stated that "Trooper Sample located a fresh, green/brown, pliable plant stem in the trash. Trooper Michalak and Trooper Sample immediately recognized the stem to be from a marijuana plant . . . ." The stem was tested and returned a positive result for the presence of marijuana.

Also found in the trash, according to the affidavit, were an empty box for a "Tetra Whisper Aquarium Heater," (allegedly used to heat water to hasten mineral absorption) and ten gray plastic circular discs. Trooper Sample advised that the discs were possibly cut from a larger tray used for "starter" or "clone" marijuana plants.

Finally, Duncanson also stated in the affidavit that:

> [o]n July 31, 2008, I received information from NIPSCO, the Northern Indiana Public Service Company, that the electricity service at The Premises is listed in the name of Marlon Spears. NIPSCO also reported that the normal usage of electricity for a residence of this size is 500-650 kilowatts per month. However, NIPSCO further reported the actual, average monthly usage for the year of 2008 for The Premises was between 1200-1300 kilowatts.

Duncanson said that the excessive kilowatt usage was consistent with that of an indoor marijuana grow operation due to the use of grow bulbs and other electrical equipment.

Based on the information contained in the warrant application, a magistrate judge issued a search warrant for Spears's home, and officers executed the warrant on August 6, 2008. During the search, law enforcement officers found 555 live marijuana plants rooted in soil, 550 grams of processed marijuana, plant pots, carbon air filters, high intensity grow bulbs, and irrigation system with plant trays, fertilizer, and books on marijuana growth. The officers also found a loaded .22-caliber rifle, 700 rounds of ammunition, and a digital scale. Spears was arrested and charged with possessing 100 or more marijuana plants with intent to distribute, being a felon in possession of a firearm, and maintaining a place for the manufacture and distribution of marijuana.

### B. Spears's Initial Motions to Suppress

Spears filed an amended motion to suppress the seized evidence, which the district court interpreted as requesting a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978). Spears attached an affidavit from a private investigator who spoke to NIPSCO representatives, including Karen Bruce, and photographs of Spears's home. The investigator stated that he was informed by NIPSCO that the only communication the company has with law enforcement is pursuant to subpoena, and that NIPSCO does not report normal usage of electricity

for specific residences. The photographs showed that the only piping outside Spears's home was not PVC piping, as the warrant affidavit stated, and was connected to the home's air conditioning unit. The government responded with its own affidavit from Ms. Bruce, in which she said that the defense's characterization of her statements was inaccurate, and that NIPSCO can provide average monthly billing information for a particular residence over the phone to members of the general public. Based on the written submissions, the court denied the motion.

Spears then filed a supplemental motion to suppress. Spears submitted as an exhibit an FBI note received in discovery that indicated that Ms. Bruce and NIPSCO senior legal counsel told the FBI that nobody is authorized to give out normal wattage usage over the phone, and that it is against NIPSCO policy to do so. Discovery also revealed that it was an analyst with the FBI, not Duncanson, who spoke with someone with access to the NIPSCO information. Accordingly, the court determined that a *Franks* hearing was necessary.

## C.  The *Franks* Hearing

At the *Franks* hearing, the court heard testimony from Duncanson, Troopers Michalak and Sample, FBI analyst Randall Strapon, and Ms. Bruce. We discuss only the relevant testimony.

Duncanson testified that she met with the informant in person on July 30, 2008, and that she and the

informant drove past Spears's home so that the informant could identify it. She stated that she did not verify the informant's claim that there was black PVC piping because there were two dogs present who would have potentially barked. She confirmed that she had stated in her affidavit that Spears "has a criminal history in the state of Indiana," but acknowledged that Spears actually had a single conviction in 1995 for a sex offense in the state of Wisconsin. Duncanson also confirmed that although she stated in the affidavit that "I received information from NIPSCO," she did not personally talk to anyone at NIPSCO; instead, she obtained the information secondhand from FBI analyst Randall Strapon. She acknowledged that NIPSCO's response to the first subpoena issued was on August 13, 2008, a week after the search.

As for the trash pull, Duncanson stated that she and a fellow officer obtained the trash from behind Spears's residence, and brought the trash to a garage and laid it out on the bed of a truck. Duncanson did not assign any significance to the items in the trash until Trooper Sample pointed them out. She testified that the marijuana stem was found on the truck's bed, and that the truck had previously been used by the Hammond narcotics unit for trash pickups. Trooper Michalak testified that he didn't remember who recovered the plant stem, and Trooper Sample first testified that Duncanson and Clark had found the plant stem, but later stated that he was the one who located it and identified its significance.

Randall Strapon, an investigative analyst associated with the FBI who worked with a Hammond area multi-agency task force, confirmed that he provided the energy usage information to Duncanson. He testified that he received the information from a contractor at NIPSCO with access to the NIPSCO computer system database, a method he finds speedier than issuing a subpoena. Strapon indicated that he has three such contacts who can provide NIPSCO information, but that he has never met the sources and does not know what procedures they use to obtain the information. He also stated that he knew nothing about the size of the residence, and relied, as he does in most cases, on the source to indicate if the electricity usage is unusually high. He stated, however, that these contacts had provided the FBI with information for at least seventeen years, and that Strapon has never had a reason to doubt the accuracy of the information provided. Strapon indicated that he was unaware that NIPSCO's official policy was not to reveal usage information to law enforcement absent a subpoena (as testified to by Ms. Bruce), but that he followed up his inquiry with a subpoena which confirmed the electricity usage at Spears's residence.

Following the hearing, the district court orally denied Spears's motion to suppress. The district court later memorialized its decision in writing, and made four findings that Spears now challenges on appeal. The court stated that while there were inconsistencies in the testimony regarding who found what during the trash pull, the officers testified credibly about the items

found and these items provided strong evidence of a marijuana grow operation. The court also rejected the argument that Duncanson recklessly disregarded the truth about the PVC piping on the side of the residence, finding that the relevant question was Duncanson's belief about the source's information, and that Duncanson testified credibly about her inability to verify the information. Third, the court found that Duncanson's statements regarding the information obtained "from NIPSCO" were "marginally misleading," but that there was no evidence that the information obtained by Strapon was false. Finally, the court found that though the error with respect to Spears's criminal history was "somewhat misleading" because it implied that his criminal history was more relevant to the probable cause determination than it was, this error did not invalidate the warrant because the other information in the application supported a finding of probable cause.

The case proceeded to trial, and the jury found Spears guilty on all three counts. Spears now appeals the denial of his suppression motion following the *Franks* hearing.

## II. ANALYSIS

In *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme Court held that when a defendant makes a substantial preliminary showing that the police procured the warrant to search his property with intentional or reckless misrepresentations in the warrant affidavit, and such statements were necessary to the finding of probable cause, the Fourth Amendment entitles him to

an evidentiary hearing during which he may challenge the constitutionality of the search. Where a hearing has been granted, as in this case, *Franks* instructs that if "at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded . . . ." 438 U.S. at 156. The district court is therefore required to first determine whether the defendant has shown by a preponderance of the evidence that the false information was provided intentionally or recklessly, and if so, whether the affidavit, stripped of the false information, is nevertheless sufficient to establish probable cause. *See United States v. Whitley*, 249 F.3d 614, 620 (7th Cir. 2001). As to the first question, the state of mind of the affiant is not the only relevant one, because "the validity of the search is not saved if the governmental officer swearing to the affidavit has incorporated an intentional or reckless falsehood told to [her] by another governmental agent." *Id*. at 621 (citing *United States v. McAllister*, 18 F.3d 1412, 1417 (7th Cir. 1994); *United States v. Pritchard*, 745 F.2d 1112, 1118 (7th Cir. 1984)).

In reviewing a denial of a motion to suppress, we review questions of law de novo and factual findings for clear error. *United States v. Ellis*, 499 F.3d 686, 688 (7th Cir. 2007). Where a defendant challenges the denial of a *Franks* hearing itself, we have found that a "showing that a warrant was based on a false statement requires

an examination of historical facts, not the eventual legal determination that any given set of facts add up to probable cause for the issuance of a warrant," and have applied a clear error standard of review. *United States v. Mancari*, 463 F.3d 590, 594 (7th Cir. 2006). We have also applied the "clear error" standard to denials of a motion following a *Franks* hearing. S*ee Whitley*, 249 F.3d 614, 621; *United States v. Childs*, 447 F.3d 541, 546 (7th Cir. 2006). We note however that though we give "'great deference' to the conclusion of the judge who initially issued the warrant,*" United States v. Garcia*, 528 F.3d 481, 485 (7th Cir. 2008) (citing *United States v. McIntire*, 516 F.3d 576 (7th Cir. 2008), that same rationale does not apply to the question facing the district court judge following a *Franks* hearing: whether the affidavit, stricken of its falsities, meets the standard of probable cause. *See Garcia*, 528 F.3d 481, 485 ("On the mixed question whether the facts add up to probable cause, we give no weight to the district judge's decision . . . ."); *see also United States v. Ruiz*, 664 F.3d 833, 838 (10th Cir. 2012) ("Whether a corrected affidavit supports a finding of probable cause is a question of law that we review de novo.") (citing *United States v. Garcia-Zambrano*, 530 F.3d 1249, 1254 (10th Cir. 2008)). We review that determination de novo.

### A. The Trash Pull

Spears challenges a number of statements in the affidavit regarding the July 31 trash pull. He first contends that the affidavit included a material omission

when it stated that the marijuana stem was found "in the trash" without disclosing that the trash was emptied onto the bed of a truck that was used in previous trash pulls. Such an inclusion would have painted a broader picture, but the initial inquiry for *Franks* purposes is not one about how the affidavit can be perfected, it is simply whether the misinformation in the affidavit was included (or the material omission was excluded) with intent or reckless disregard for the truth. Here, Spears does not show that the district court clearly erred in its determination that the omission was intentional or reckless, especially since the stem was found along with other evidence that tended to show a marijuana grow operation that Spears does not allege could have been leftover on the truck from a previous pull.

As to those other items, Spears argues that Duncanson gave too much credit to the aquarium materials (that the informant did not mention) without disclosing that no fertilizer or growing mediums (which the informant did mention) were found. However, it is perfectly clear that aquarium equipment has a legal purpose, namely, having a home aquarium. We cannot find that the failure of Duncanson to articulate that these items have a legal purpose is a material omission, let alone one made with intent or reckless disregard. Additionally, it is also clear from the face of the affidavit that the items recovered during the trash pull did not perfectly match the items described by the informant (with the exception of the plant stem). We therefore find that the omission was immaterial. *See United States v. Norris*, 640 F.3d 295, 302 (7th Cir. 2011) ("[T]he facts withheld also must be

'material' to the probable cause determination.") (citation omitted).

Spears does not heavily rely on the inconsistent testimony as to who actually found the plant stem to show a *Franks* violation, but for purposes of completeness, we address that argument here. The affidavit stated that "Trooper Sample located a fresh, green/brown, pliable plant stem in the trash," and "immediately recognized the stem to be from a marijuana plant." Spears points to testimony at the *Franks* hearing that he argues calls this into question. Trooper Michalak testified that he didn't remember who recovered the marijuana stem. Trooper Sample first testified that Agents Duncanson and Clark had pulled plant material out of the trash before he arrived at the garage, but then later stated that it was he who found the plant material.

Regardless of the slight inconsistencies, however, the district court found that the testimony did not reveal that the statements in the affidavit were made with intent to deceive or with reckless disregard of the truth. The court noted that Duncanson prefaced the affidavit by saying that the information was based on firsthand knowledge "and the information provided by other law enforcement officers and witnesses," and that this statement was applicable here. The court found the slight variations in testimony as to who found the stem did not show intent or reckless disregard for the truth. This finding is not clearly erroneous.

**B.  PVC Piping**

In her affidavit, Duncanson stated that the confidential informant told her about black PVC piping that was routed from the basement of Spears's home to the exterior of the residence. Spears alleges that Duncanson should have seen that there was, in fact, no such piping when she surveyed the house with the informant, and her failure to inform the court of this amounted to a *Franks* violation.

The district court noted that photos admitted during the *Franks* hearing (well after the warrant was executed) made it "seem[ ] clear" that the informant was "likely mistaken" about there being PVC piping coming from the home. Regardless, the district court's focus was on what Duncanson knew at the time of the affidavit, not what the informant knew or thought, and the court credited Duncanson's testimony that she was unable to verify that there was black PVC piping during her observation because of the presence of two dogs. Spears does not point to anything besides those post-search images to attack the district court's finding. The photograph of the home submitted along with the affidavit does not so clearly show that no piping existed, and a person would not be reckless for failing to alert the court to the informant's error given that image. There is therefore no clear error in the district court's determination that Duncanson did not intentionally or recklessly fail to alert the court to the lack of PVC piping.

### C. NIPSCO Information and Spears's Criminal History

Duncanson stated in the affidavit that "I received information from NIPSCO," and "NIPSCO reported" an excessive kilowatt usage compared to "the normal usage . . . for a residence of this size." The *Franks* hearing and documents turned over during discovery revealed that these phrases were not entirely accurate. Duncanson did not receive the information directly from NIPSCO, and in fact did not directly receive any electricity information herself. It was obtained by Randall Strapon, an analyst assigned to the FBI. And Strapon himself did not receive the information "from NIPSCO" in the ordinary sense of the phrase, since it was obtained from a source not directly employed by NIPSCO who had access to the NIPSCO database. Spears argues that a *Franks* violation occurred because Duncanson: (1) misrepresented that she had personal involvement with obtaining the information; (2) misrepresented the nature of how she obtained the information; and (3) provided substantively false information.

We can easily dispense with Spears's third argument, which is premised on the fact that neither Duncanson nor Strapon verified that the source properly calculated the average monthly electricity usage for comparison purposes. Courts have found that failing to inform the court of dissimilarities in houses being compared can amount to a material omission. *See, e.g., United States v. Huggins*, 299 F.3d 1039, 1045 n.6 (9th Cir. 2002) ("Evidence demonstrating that the affidavit had failed to state, for example, that the neighboring houses were much

smaller . . . might well have made out a material omission that would preclude reliance on the good faith exception."); *see also United States v. Scully*, 1992 WL 159329, at *6 (N.D. Ill. 1992) (unpublished) ("Anyone who looked at these homes was reckless in stating that the three were comparable."). Here, by contrast, the affidavit did not compare Spears's electricity usage with that of his neighbors; rather, the affidavit set forth the average monthly usage for a "residence of this size." It bears repeating that the first step of the *Franks* inquiry following a hearing focuses on Duncanson's (and her fellow officers') state of mind. *See Franks*, 438 U.S. 154, 156, 171. Though neither Strapon nor Duncanson were aware of the methodology or calculations made by the source, there was nothing revealed in the *Franks* hearing that suggests that Duncanson or Strapon had reason to believe that a false or misleading comparison was made. Spears therefore cannot show that the district court clearly erred in finding that Duncanson did not intentionally include false information.

Spears's first two arguments are closer questions. Duncanson stated in the affidavit that *she* received information from NIPSCO. The district court said this was "marginally misleading" given that the information was not received by Duncanson directly. But then the district court said it was "not really" misleading, because earlier in the affidavit Duncanson stated that all information in the affidavit was based upon "firsthand knowledge *and* the information provided by other law enforcement officers and witnesses." (Emphasis added.)

Spears relies on *United States v. Davis*, 714 F.2d 896, 899 (9th Cir. 1983), where the affiant (falsely) stated that he conducted personal interviews with sources when in fact they were conducted by his subordinates. The affiant cut and pasted an affidavit from another investigation, and revealed during a *Franks* hearing that he knew the statement regarding his personal involvement was false, but submitted the affidavit anyway. *Id*. at 899. The Ninth Circuit found that the "entire problem could have been avoided if [the affiant] had simply rewritten the affidavit to indicate that he was relying on his officers who had personally interviewed the informants. *Id*. (citations omitted). The court held that "by failing properly to identify [his] source[ ] of information the affiant[ ] . . . made it impossible for the magistrate to evaluate the existence of probable cause," and that "[t]he fact that probable cause did exist and could have been established by a truthful affidavit does not cure the error." *Id*.

Other courts have been more forgiving with phrasing implying personal knowledge or a personal role in the investigation in a *Franks* analysis. The Eleventh Circuit, for example, has cautioned that the requirement to state in the affidavit that an officer is relying upon other officers "should not be viewed 'in a hypertechnical, rather than a common-sense, manner.' It is sufficient if the affidavit recites at the outset, or if it is clear from reading the affidavit as a whole, that it is based in part upon information obtained from other law enforcement officers." *United States v. Kirk*, 781 F.2d 1498, 1505 (11th Cir. 1986) (quoting *United States v. Vantresca*, 380 U.S. 102,

108-09 (1965)). In *Kirk*, however, the affiant "properly identified the source of the information . . . and outlined the circumstances which indicated the reliability of the information." *Id*. In the affidavit, the affiant included the names of all of the officers engaging in surveillance of the defendant and what that surveillance entailed. *Id*. at 1499-1500. The Eleventh Circuit found no misrepresentation where the affiant included some events that he had not personally witnessed. *Id*. at 1505; *see also United States v. Reed*, 700 F.2d 638, 641 (11th Cir. 1983) (upholding warrant even though affiant failed to specify the source of his information because a "reasonable person" would infer that the information came from fellow police officers).

Spears argues that no magistrate judge could infer from this affidavit that the information came from a fellow officer (since Strapon was not actually an officer or otherwise identified anywhere in the affidavit), or that the actual sources of the information were reliable. Alas, this is not a question we must resolve, because even if we agreed with Spears's position that the omission was material, misleading, and done so with intent or reckless disregard, and that the district court committed clear error, we would find that the warrant contained sufficient probable cause with the electricity information stricken, as discussed below.

The same is true of the statement related to Spears's criminal history. Duncanson stated that she ran a criminal history check on Spears, "and found that he has a criminal history in the state of Indiana." This was

false. Spears had a single conviction in 1995 for a sex offense in the state of Wisconsin. The district court found this "somewhat misleading" because "the search warrant related to drugs, and the prior conviction was a sex offense, yet this wasn't disclosed," and because "this could have misled the magistrate into believing that the prior offense was related to the potential crimes that were the subject of the search." The district court found, however, that even if stricken, the warrant would still stand.

Probable cause is established when, based on the totality of the circumstances, the affidavit sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime. *See Illinois v. Gates*, 462 U.S. 213, 238 (1983); *United States v. Garcia*, 528 F.3d 481, 485-86 (7th Cir. 2008). Where probable cause is based on information supplied by an informant, we consider several factors: "(1) the extent to which the police have corroborated the informant's statements; (2) the degree to which the informant has acquired knowledge of the events through firsthand observation; (3) the amount of detail provided; and (4) the interval between the date of the events and police officer's application for the search warrant." *United States v. Koerth*, 312 F.3d 862, 866 (7th Cir. 2002).

In this case, the informant provided detailed information about the marijuana grow operation, and stated that he or she had obtained the information firsthand. The information was specific as to the size of the operation,

the location of the marijuana plants, and the equipment used in the endeavor. Duncanson and other officers corroborated that Spears lived at the premises. During the trash pull, the officers found evidence that, in totality, would induce a reasonably prudent person to believe that a grow operation was in progress, including the aquarium equipment (that in the officers' expertise, was used for the cultivation of marijuana plants), and, of course, the marijuana stem. Finally, the amount of time between the informant's information, the corroboration of that information, and the application for the warrant was minimal. Accordingly, we find that even if the electricity and criminal history information were stripped, the remaining portions of the affidavit would be sufficient for a finding of probable cause. We therefore decline to reach Spears's arguments regarding those portions of the affidavit, and affirm the conviction.

## III. CONCLUSION

For the reasons set forth above, Spears's conviction is AFFIRMED.