In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-3352

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MASON S. MCMURTREY,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 1:10-cr-10070—**James E. Shadid**, *Chief Judge.*

ARGUED SEPTEMBER 12, 2012—DECIDED JANUARY 10, 2013

Before FLAUM, WOOD, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* If police officers obtain a search warrant by deliberately or recklessly providing the issuing court with false, material information, the search warrant is invalid. In *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme Court held that when a defendant makes a substantial preliminary showing that the police procured a warrant to search his property with deliberate or reckless misrepresentations in the warrant affidavit, and where such statements were necessary to the finding of probable cause, the Fourth

Amendment entitles the defendant to an evidentiary hearing to show the warrant was invalid. In this appeal we attempt to clarify some issues concerning the procedures a district court may or must use in evaluating a criminal defendant's motion to suppress evidence under *Franks*.

A district court that is in doubt about whether to hold a *Franks* hearing has discretion to hold a so-called "pre-*Franks*" hearing to give the defendant an opportunity to supplement or elaborate on the original motion. Though permissible, this procedural improvisation is not without risk, as the sparse case law indicates. In such a pre-*Franks* hearing, the natural temptation for the court will be to invite and consider a response from the government. However, the court should not give the government an opportunity to present its evidence on the validity of the warrant without converting the hearing into a full evidentiary *Franks* hearing, including full cross-examination of government witnesses. We emphasize that the option to hold such a limited pre-*Franks* hearing belongs to the district court, not the defendant. If the defendant's initial *Franks* motion does not make the required "substantial preliminary showing," the court need not hold a pre-*Franks* hearing to provide the defendant a further opportunity to do so.

In this case, defendant Mason McMurtrey pled guilty and was sentenced to a total of 180 months in prison for possession of more than five grams of crack cocaine with intent to deliver and possession of a firearm during a drug trafficking crime. 21 U.S.C. § 841(a)(1), (b)(1)(B); 18 U.S.C. § 924(c). The defendant's guilty plea reserved

his right to appeal the denial of his motion to suppress the fruits of a search based on a warrant obtained with an affidavit he contends was deliberately or recklessly false.

The defendant made a sufficient preliminary showing under *Franks* by offering two police officers' affidavits. On the critical issue of which of two houses should be searched, the affidavits contradicted each other. The affidavits also indicated that each officer previously had contradicted himself in the information he had provided to the other officer. That evidence was sufficiently specific to support (though not require) a reasonable inference that the affidavit submitted to support the search of the defendant's home was deliberately or recklessly false. Rather than hold a full *Franks* hearing, however, the district court held a truncated pre-*Franks* hearing. The district court permitted the government to offer additional evidence to explain the discrepancies in the affidavits. That evidence should have required a full *Franks* hearing, yet the defendant was not permitted full cross-examination on the government's new evidence. The court then relied on the untested government evidence to find that the defendant had failed to make a showing sufficient to obtain a full *Franks* hearing. This procedure was erroneous because it denied defendant his full opportunity to challenge the warrant under *Franks*. Accordingly, we vacate and remand for further proceedings.[1]

---

[1] When the defendant was sentenced on the crack cocaine charge, the district court properly relied on our decision in

(continued...)

I. *Factual and Procedural Background*

The problem here stemmed from confusion between two officers about which of two neighboring houses should be searched. After he was indicted, defendant McMurtrey asked the government to produce the documents underlying the search warrant that was executed at his house at 1514 West Aiken Street in Peoria, Illinois. In response to this request, the government produced a search warrant for a different house, 1520 West Aiken Street. That warrant was supported by the affidavit of Officer Matthew Lane. McMurtrey immediately moved to suppress the evidence found in the search because the police had not searched 1520 West Aiken. They had searched 1514 West Aiken. In response to the defendant's motion, the government then produced a second search warrant affidavit — this one for 1514 West Aiken — by Officer Erin Barisch.

Aside from the target addresses, the Lane and Barisch affidavits were very similar. The Lane affidavit was dated

---

[1] (...continued)

*United States v. Fisher*, 635 F.3d 336 (7th Cir. 2011), and refused to apply the Fair Sentencing Act of 2010. However, *Fisher* was overturned by the Supreme Court in *Dorsey v. United States*, ___ U.S. ___, 132 S. Ct. 2321 (2011), which held that the Fair Sentencing Act applies to all persons who were sentenced after its enactment without regard to when the underlying criminal conduct occurred. Because we remand on the *Franks* issue, defendant's appeal of his sentence is moot, but it is now clear that if he faces resentencing, he will be entitled to application of the Act.

June 17, 2010, and described 1520 West Aiken as "a gray with white trim, one and one half story, single family residence, and the numbers '1520' affixed to the front of the residence." It said that a confidential informant told Lane that a black male known as "Milltown" was in possession of and was selling cocaine from 1520 West Aiken. The confidential informant had been present at 1520 West Aiken at least twice in the previous 30 days, most recently within the previous 72 hours, and said that each time he had observed Milltown in possession of crack cocaine packaged for sale. The Lane affidavit was bolstered by a separate affidavit by this confidential informant.

Officer Lane's affidavit stated further that he had spoken with Officer Barisch, who had informed Lane that he also "had controlled buys" from Milltown at 1520 West Aiken. Milltown was described as approximately 28 years old, 5 feet, 10 inches tall, and 230 pounds, with black hair, brown eyes, and a dark complexion. In a photographic line-up, the confidential informant had identified McMurtrey as Milltown. Based on the Lane affidavit and the informant's affidavit, an Illinois state judge issued a search warrant for 1520 West Aiken on June 17, 2010 at 3:00 p.m.

This search warrant, however, was never executed. Instead, later that day Officer Barisch sought a separate search warrant for 1514 West Aiken. The Barisch affidavit supporting the application provided essentially identical information concerning Milltown's activities, but it placed the activities at 1514 West Aiken. Barisch's

affidavit described the target residence as a "gray with white trim, one and one half story, single family residence, and the numbers '1514' affixed to the front of the residence." He affirmed that on June 17th a reliable confidential informant said he had been inside 1514 West Aiken at least three times in the previous 30 days, most recently within the past 72 hours, and on each of those occasions had observed Milltown in possession of crack cocaine.

The Barisch affidavit was not supported by a sworn statement of this confidential informant. Barisch swore, however, that Officer Lane had told Barisch that Lane's confidential informant was also purchasing crack cocaine from "Milltown" at 1514 West Aiken, not 1520 West Aiken, as Lane and the informant had sworn a few hours earlier in obtaining the warrant for that house. Finally, Officer Barisch testified that he had observed 1514 West Aiken and over the past 72 hours had noticed heavy foot traffic coming and going from the residence, entering through a side door and staying only a few minutes. The Barisch affidavit was silent concerning any knowledge or information about Lane's search warrant affidavit for 1520 West Aiken, which stated that Barisch had observed nearly identical conduct at 1520 West Aiken during the same period. The Barisch affidavit was also silent about his having given Officer Lane information, as set forth in the Lane affidavit, that directly contradicted his own affidavit. Again, Lane's affidavit said that Barisch had told him that he was overseeing controlled buys from 1520 West Aiken, not 1514.

Without knowledge of the contradictory Lane affidavit and search warrant, or Barisch's contradictory statements in support of the Lane affidavit, a second Illinois state judge issued a search warrant based on the Barisch affidavit later on June 17, 2010, at 7:25 p.m. Officers executed this search warrant, and the evidence supporting McMurtrey's indictment was found at 1514 West Aiken.

With the two conflicting affidavits in hand, the defendant amended his motion to suppress to rely on *Franks v. Delaware*. He argued that when the Barisch and Lane affidavits are read together, one can reasonably infer (a) that Barisch intentionally or recklessly misstated material facts in either his own affidavit for the 1514 West Aiken warrant or in the information he provided to Lane for the 1520 West Aiken warrant, and/or (b) that Lane intentionally or recklessly misstated material facts in the information he provided to Barisch for the 1514 West Aiken warrant or in his affidavit for the 1520 West Aiken warrant. The defendant sought a hearing under *Franks* to determine whether the warrant used to search his house had been obtained with deliberately or recklessly false information.

Rather than hold a *Franks* hearing, the district court held what could be termed a "pre-*Franks*" hearing. The purpose was to determine whether the defendant had made a substantial preliminary showing of intentional or reckless misrepresentations in the warrant affidavit, and thus whether a true *Franks* hearing should be held.

At the hearing, the parties presented brief arguments. So far, so good. Then, without finding that McMurtrey either had or had not made his substantial preliminary *Franks* showing, the court permitted the government to call Officer Barisch to testify to respond to the defense's allegations. The prosecutor said he was calling Officer Barisch because otherwise he might "leave hanging in the air the idea that either one of these officers did anything wrong because I think as the court will hear, if they testify, that they did everything right. They did exactly what we would want officers to do." Tr. 22-23. The government's expressed purpose was to bolster the Barisch affidavit and the issuing judge's probable cause finding based on that affidavit. The court permitted the government to do so.

On direct examination, Officer Barisch testified in some detail regarding the basis for his search warrant affidavit, including steps he took on June 17th to verify that 1514 West Aiken was the correct address. According to Barisch's testimony at the pre-*Franks* hearing, after the search warrant for 1520 West Aiken had been issued, he and Lane realized they were both investigating "Milltown" for drug dealing but seemed to be investigating different houses. Barisch testified that he and Lane collected their confidential informants and, one at a time, sent those informants into 1514 West Aiken to buy crack from Milltown. None of this information was presented to the judge who, later that day, reviewed Barisch's affidavit and issued the 1514 West Aiken warrant. The affidavit was silent concerning the existence of Lane's affidavit and the information it con-

tained, the fact that a search warrant had been issued to search 1520 West Aiken based on Lane's affidavit (which included information from Barisch), the officers' discovery of the mistake, and the efforts they say they made to double-check the target address.

Defense counsel began to cross-examine Officer Barisch. In the midst of the cross-examination on the explanation Barisch had provided, though, the government objected that such testimony would be inappropriate outside of a full-blown *Franks* hearing.[2] The court sustained the objection but assured defense counsel that she would be permitted to conduct further cross-examination of Officer Barisch if the court concluded that the defense had met its burden to require a full *Franks* hearing. The court permitted defense counsel to continue some cross-examination but kept her from questioning Officer Barisch further concerning the basis for his affidavit. After this limited cross-examination,

---

[2] During oral argument on appeal, the government asserted for the first time that the hearing was actually a full *Franks* hearing. Before the district court, however, the government objected to further cross-examination on the ground that the hearing was not a true *Franks* hearing but was instead "a preliminary hearing to see whether or not [defendant's counsel] meets her burden to have that *Franks* hearing." Tr. 38. The district court agreed and sustained the objection on that basis, Tr. 39, and concluded the hearing by finding that the defendant was not entitled to a *Franks* hearing. Tr. 45. We take the district court at its word and approach the appeal from the premise that there was no true *Franks* hearing.

the court found that a *Franks* hearing was not needed. In making that decision, the court relied in large part on Barisch's testimony explaining how he and Lane had discovered the mix-up and had double-checked the address before drafting his warrant affidavit — facts that had not been before the issuing judge and that were not subject to full cross-examination. Defendant McMurtrey appeals, arguing that this procedure was inconsistent with *Franks*.

II. *Analysis*

A. *Franks v. Delaware*

We review the district court's denial of the defendant's request for a *Franks* hearing for clear error. See *United States v. Schultz*, 586 F.3d 526, 531 (7th Cir. 2009). While our clear error inquiry is factually based and requires that we give particular deference to the district court, any legal determinations that factor into the court's ruling are reviewed *de novo*. See *United States v. Harris*, 464 F.3d 733, 737 (7th Cir. 2006). We conclude here that the district court erred procedurally by: (a) allowing the government to offer evidence explaining the contradictions and discrepancies in the affidavits, (b) preventing the defendant from cross-examining that explanation, and then (c) relying on the government's new explanatory evidence to deny the *Franks* motion.

The Warrant Clause of the Fourth Amendment requires that, apart from exceptions not applicable here, the police must obtain a warrant from a neutral

magistrate before searching private property. The amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation," typically provided by an officer's warrant affidavit to justify the search. Probable cause is established when, considering the totality of the circumstances, there is sufficient evidence to cause a reasonably prudent person to believe that a search will uncover evidence of a crime. *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

The Supreme Court held in *Franks v. Delaware* that a search warrant is not valid if the police obtain it by deliberately or recklessly presenting false, material information to the issuing judge. The Fourth Amendment requires an evidentiary hearing on the veracity of a warrant affidavit, and ultimately on the constitutionality of the search, when a defendant requests such a hearing and "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and . . . the allegedly false statement is necessary to the finding of probable cause." *Franks*, 438 U.S. at 155-56; see also *United States v. Spears*, 673 F.3d 598, 604 (7th Cir. 2012). *Franks* also applies to deliberately or recklessly deceptive omissions. See *Harris*, 464 F.3d at 738, citing *United States v. Williams*, 737 F.2d 594, 604 (7th Cir. 1984); see also *Shell v. United States*, 448 F.3d 951, 958 (7th Cir. 2006) (recognizing omission theory but finding no violation).

It is relatively difficult for a defendant to make the "substantial preliminary showing" required under

*Franks*. Allegations of negligent or innocent mistakes do not entitle a defendant to a hearing, nor do conclusory allegations of deliberately or recklessly false information. The defendant must identify specific portions of the warrant affidavit as intentional or reckless misrepresentations, and the claim of falsity should be substantiated by the sworn statements of witnesses. *Franks*, 438 U.S. at 171. To obtain a hearing, the defendant must also show that if the deliberately or recklessly false statements were omitted, or if the deliberately or recklessly misleading omissions included, probable cause would have been absent. See *id*. at 171-72. That showing does not necessarily entitle the defendant to a favorable finding on the merits, but it entitles the defendant to a hearing where he must prove falsity or recklessness (as well as materiality) by a preponderance of the evidence. *Id*. at 156. At the hearing stage, the court reconsiders the affidavit, this time eliminating any deliberately or recklessly false statements and incorporating any such omitted material facts, and determines whether probable cause existed nevertheless. See *Spears*, 673 F.3d at 604; *Harris*, 464 F.3d at 738.

## B.  *The Procedural Error in the Pre-Franks Hearing*

It's not always easy to draw the *Franks* line between sufficient and insufficient showings, so in some cases district courts have held "pre-*Franks*" hearings to give defendants opportunities to supplement or elaborate on their original submissions. See, *e.g., United States v. Taylor*, 154 F.3d 675, 680 (7th Cir. 1998) (noting that in "an excess

of caution" district court held an evidentiary hearing to enable defendant to develop his *Franks* argument, treating hearing as one to determine whether the preliminary showing could be met). Such hearings are well within a district court's discretion to aid it in making a sound decision on whether to hold a full *Franks* hearing.

The problem arises, though, when a "pre-*Franks*" hearing becomes a vehicle for the government to present new evidence to explain the discrepancies identified by the defense, yet the defense is not given a full opportunity to challenge or rebut that evidence. Such government evidence is appropriate for the *Franks* hearing itself, where the defense must have the opportunity for full cross-examination. *Harris*, 464 F.3d at 739 ("The opportunity to cross-examine an officer who has intentionally or recklessly made false statements to procure a search warrant is an important aspect of a *Franks* hearing."). In the *Harris* case, the district court allowed the government to bolster its affidavits but did not allow full cross-examination by the defense. For that reason, we reversed the denial of the *Franks* motion and remanded for a full hearing on the merits. *Harris*, 464 F.3d at 740-41.[3]

---

[3] The government relies on *Spears*, 673 F.3d at 602, in which the district court considered a new affidavit from the government to deny the defendant's request for a *Franks* hearing. *Spears* does not help the government because the district court there had later granted a full *Franks* hearing after the defendant filed still more evidence. Our description of the procedures used in *Spears* should not be construed as having

(continued...)

The pre-*Franks* hearing in this case went astray when the court allowed the government to bolster Officer Barisch's affidavit with additional testimony to explain the discrepancies and contradictions, but then denied the defendant the opportunity to cross-examine Barisch fully on his affidavit. That overstepped the bounds of a pre-*Franks* hearing, but fell short of the procedures required for a full *Franks* hearing. The court's restrictions on cross-examination would not have mattered if the defendant had not made a sufficient showing to obtain a full *Franks* hearing, but as we explain below, in this case he had already done so by pointing out the clear discrepancies and contradictions between the Barisch and Lane affidavits and their accounts of what they had told each other. To find that the defendant had not made his substantial preliminary showing under *Franks*, though, the district court expressly relied on the government's new bolstering evidence.

The government's explanation may or may not be true, but for the reason we explained in *Harris*, the procedure used here is not acceptable. The defendant in *Harris* challenged the existence of the confidential informant whose statements supported the search warrant affidavit. The district court directed the govern-

---

[3] (...continued)

approved the use of the government's new affidavit to deny the original motion for a *Franks* hearing. The district court's later *Franks* hearing rendered that issue moot. It was not decided in the appeal.

ment to file a supplemental affidavit from the officer who had applied for the warrant, and concluded, based on information included in the supplemental affidavit, that there had been probable cause for the search. We reversed:

> Considering new information presented in the supplemental filing that supported a finding of probable cause was beyond the trial court's analytical reach. Rather, its consideration of new information omitted from the warrant affidavit should have been limited to facts that did not support a finding of probable cause.

*Harris*, 464 F.3d at 739. We did not hold that the defendant in *Harris* was entitled to suppression, but we remanded for a full *Franks* hearing on the merits. *Id*. at 740-41. The same remand is needed here for essentially the same reason.

Allowing the government to offer evidence to explain the discrepancies and contradictions in the affidavits — without allowing the defense a full and fair opportunity to challenge the explanation, as in this case — "does not satisfy the Fourth Amendment concerns addressed in *Franks*." *Id*. at 739. Instead, in deciding the threshold question whether to grant a *Franks* hearing, the court should have limited its consideration of new information to the defense's evidence tending to refute probable cause. The court should not have considered at that preliminary step the government's explanation

of the contradictions and discrepancies.[4]

C. *Whether the Procedural Error Was Harmless*

The government argues that the procedural error here was harmless because McMurtrey simply failed to show he was entitled to a *Franks* hearing. According to the government, the inconsistencies between the Lane and Barisch affidavits, including the information that each officer attributed to the other officer and to the informants, were not sufficient for the preliminary showing needed to require a full *Franks* hearing. We disagree and conclude that McMurtrey's preliminary showing was sufficient. Once the government's new evidence to explain the contradictions is removed from consideration, we are persuaded that McMurtrey made

---

[4] To resolve the contradictions, the government also suggests without evidentiary support that a magistrate examining both the Lane and Barisch affidavits could have reconciled them by concluding that McMurtrey was dealing drugs from *both* 1514 and 1520 West Aiken. That speculative possibility is not enough to defeat the need for the *Franks* hearing. The contradictions and discrepancies here were sufficient to support a reasonable inference of deliberate or reckless deception of the issuing judge, and thus required a full *Franks* hearing at which the government could offer evidence to explain the discrepancies and contradictions. Besides, although Officer Barisch testified that a few houses on West Aiken were being investigated, he also testified that 1520 was not one of them.

a substantial preliminary showing that the search warrant for 1514 West Aiken was obtained on the basis of deliberately or recklessly false information and/or material omissions.

It is not easy for a defendant to make the required preliminary showing under *Franks*, which requires evidence (1) that the warrant contained false information; (2) that the false information was included in the affidavit intentionally or with reckless disregard for the truth; and (3) that the false information was necessary to find probable cause and issue the warrant. See *Franks*, 438 U.S. at 155-56; see also *Harris*, 464 F.3d at 738; *United States v. Whitley*, 249 F.3d 614, 620 (7th Cir. 2001).[5] The defendant must include with his allegations of material and intentional or reckless falsehoods or omissions "an offer of proof." *Franks*, 438 U.S. at 171. It is well established that conclusory allegations are not

---

[5] If the defendant's theory is that the police deliberately or recklessly omitted information so as to mislead the magistrate, the standard is even a little more demanding. As the Fourth Circuit has explained, a police officer applying for a search warrant must always select, deliberately, which information about an investigation to give the judge and which information to leave out. The police need not report every dead end or dry hole in the investigation. As a result, a defendant basing a *Franks* challenge on omissions must show that a material omission was designed to mislead or was made in reckless disregard of whether it would mislead. *United States v. Tate*, 524 F.3d 449, 455 (4th Cir. 2008), quoting *United States v. Colkley*, 899 F.2d 297, 300-01 (4th Cir. 1990).

enough, *e.g.*, *United States v. Johnson*, 580 F.3d 666, 671 (7th Cir. 2009); *United States v. Souffront*, 338 F.3d 809, 823 (7th Cir. 2003), but it is equally true that the defendant need not come forward with conclusive proof of deliberate or reckless falsity. Otherwise, there would be no need for a *Franks* hearing.

*Franks* was not yet in play when McMurtrey first moved to suppress the fruits of the search of his home at 1514 West Aiken. In that motion, he argued simply that the search of that property was carried out without a warrant or any other showing of probable cause. Dkt. No. 21. In discovery, the government had produced the warrant for 1520 West Aiken and its supporting papers. At that point, all McMurtrey could have known was that the police had seemingly searched the wrong house. In response to McMurtrey's initial motion, the government produced the correct search warrant, the one for McMurtrey's property at 1514 West Aiken. If the statements Officer Barisch made in support of the search warrant affidavit for 1514 West Aiken were true and correct, the police had probable cause to conduct the search. But McMurtrey also had in hand the search warrant affidavit for 1520 West Aiken, in which Officers Lane and Barisch each offered evidence in support of probable cause to search *that* property that directly contradicted Barisch's warrant affidavit for 1514 West Aiken. Between the two conflicting affidavits, Officers Lane and Barisch each had contradicted himself and the other officer.

With this conflicting evidence in hand, McMurtrey then amended his motion to suppress to invoke *Franks*.

The amended motion attached the conflicting search warrants and the affidavits from Officers Barisch and Lane and the informant, and the motion highlighted the direct contradictions between the two officers' affidavits and what each affidavit said about the other officer's information. This motion and its supporting evidence must be our focus for determining whether McMurtrey showed he was entitled to a *Franks* hearing. And, as explained above, to evaluate properly McMurtrey's initial showing, we need to disregard the bolstering evidence the government offered in rebuttal to McMurtrey's motion, including the evidence it presented at the pre-*Franks* hearing. See *Harris*, 464 F.3d at 739. We turn to the three elements needed for the preliminary showing.

First, when viewed side-by-side, the affidavits made a sufficient showing that the information submitted to obtain the 1514 West Aiken warrant was false. Barisch's affidavit described criminal and suspicious activity going on at 1514 West Aiken. But Lane's affidavit said the same activity was going on at 1520 West Aiken *and that Barisch had also placed the same activity at 1520 West Aiken*. Each officer's affidavit stated under oath that the other officer gave him information that conflicted directly with what the other officer said in his own affidavit. The contradictions are not conclusive as to which affidavit was false, but it is obvious from the face of the two sworn documents that both could not be correct. Taken together, they made a sufficient preliminary showing of falsity.

Second, as for deliberate or reckless falsity, these were firsthand reports of direct observations by police officers trained to observe carefully and report accurately. Yet, again, in the Lane affidavit, Officer Lane and Officer Barisch averred that McMurtrey was dealing drugs from 1520 West Aiken. Just a few hours later and without explanation, the same officers contradicted themselves and each other and asserted that McMurtrey was dealing drugs from 1514 West Aiken. Without the bolstering evidence later supplied by the government, one could reasonably infer that one or both versions of the officers' contradictory statements were deliberately or recklessly false. These were not obvious scrivener's errors or minor mistakes in communicating information from others. Cf. *United States v. Smith*, 576 F.3d 762, 765 (7th Cir. 2009) (discrepancy as to whether there were two or three controlled buys did not require *Franks* hearing); *United States v. McClellan*, 165 F.3d 535, 545 (7th Cir. 1999) (transposed digits in address of target house in one portion of affidavit not needed for probable cause did not require *Franks* hearing; remainder of affidavit had correct address). In this case, again, these were direct contradictions in firsthand reports by police officers about their own observations of the critical facts.

It is reasonable to infer that such direct contradictions by and between capable and careful police officers were unlikely to be merely negligent. Deliberate or reckless disregard for the truth, like other states of mind, must be shown by circumstantial evidence. The circumstantial evidence in McMurtrey's *Franks* motion permitted a reasonable inference of falsity because it provided "obvi-

ous reasons to doubt the veracity" of the allegations. See *United States v. Whitley*, 249 F.3d 614, 621 (7th Cir. 2001) (reversing denial of *Franks* motion after evidentiary hearing), quoting *United States v. Williams*, 737 F.2d 594, 602 (7th Cir. 1984) (affirming denial of *Franks* motion after evidentiary hearing). Though a more searching exploration of the circumstances in a full eviden-tiary hearing may demonstrate otherwise, of course, McMurtrey satisfied his preliminary obligation to show recklessness by these officers.

Third, the apparently false information went to the heart of probable cause for the search. Were the controlled buys made in the 1514 house or the 1520 house? Each warrant application on its own was sufficient to support probable cause for a search, but if we disregard the information about McMurtrey's apparent drug-dealing activity at 1514 West Aiken, which is contradicted by the application for 1520 West Aiken, the probable cause disappears. The apparently false information was critical to probable cause for the search.

The government argues that the inconsistencies between the Lane and Barisch affidavits, including the information that each officer attributed to the other officer and to his informants, fell short of the preliminary showing needed to require a full *Franks* hearing. For the reasons set forth above, we disagree. The gov-ernment also argues that McMurtrey failed to show the Barisch affidavit was false and that in fact the Barisch affidavit was true. To make this argument, however,

the government must rely on a source of evidence that is not properly available to it: Barisch's testimony from the pre-*Franks* hearing, where he was not subject to full cross-examination. Gov't Br. 22. In other words, the government relies on the results of the hearing to show that the hearing was unnecessary and the search was proper. The argument is circular and conflicts with both *Franks* and *Harris*. It underscores the need for a full hearing.

When we focus properly on just the amended motion to suppress in which McMurtrey sought a *Franks* hearing, we conclude that he came forward with sufficient specific evidence, not just allegations and conclusions, to support a reasonable inference of deliberate or reckless falsity. The government was not entitled to defeat his request for a hearing by presenting its evidence and explanations without subjecting them to full scrutiny and cross-examination at a *Franks* evidentiary hearing, as *Harris* made clear. Such a hearing is the proper forum for the government to present its explanations for the contradictions, including what it asserts were the officers' discovery of the apparent confusion about the proper address and their efforts to sort things out.

On remand, if the district court credits Barisch's explanation of events, the *Franks* issue will become whether the police deliberately or recklessly misled the judge who issued the 1514 West Aiken warrant by omitting information about the officers' confusion and efforts to confirm the correct information. On this issue,

the Fourth Circuit's explanation of the *Franks* standard as applied to omissions may be useful. See *United States v. Tate*, 524 F.3d 449, 454-55 (4th Cir. 2008) (officer applying for warrant must select which information to include and which to omit; issue is whether material information was omitted deliberately or recklessly to mislead the magistrate); see also *United States v. McNeese*, 901 F.2d 585, 594 (7th Cir. 1990) (discussing *Franks* as applied to omissions), overruled on other grounds as recognized by *United States v. Westmoreland*, 240 F.3d 618, 632-33 (7th Cir. 2001); *United States v. Simmons*, 771 F. Supp. 2d 908, 916-18 (N.D. Ill. 2011) (finding omissions were intended to mislead). The police need not provide every detail of an investigation, nor describe every wrong turn or dead end they pursued. But they may not deliberately omit information the magistrate needs to assess fairly the issue of probable cause.

*Conclusion*

In sum, because it is impossible to resolve the officers' factual contradictions as set forth in their conflicting warrant affidavits without improperly relying on the bolstering information that was supplied in the district court, we remand for a full *Franks* hearing. In that hearing, the government will have a full opportunity to explain the contradictions and omissions in the affidavits for the two warrants, and the defendant will have a full opportunity for cross-examination and presentation of additional evidence of his own.

The judgment of the district court is VACATED and the case is REMANDED for proceedings consistent with this opinion.