**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-1319
_____

UNITED STATES OF AMERICA

v.

THOMAS CLAY WADE,
Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(D.C. No. 2-10-cr-00201-001)
District Judge: Hon. Joy Flowers Conti
_____

Submitted Under Third Circuit LAR 34.1(a)
October 5, 2015
_____

Before: SHWARTZ, KRAUSE, and GREENBERG, <u>Circuit Judges</u>.

(Filed: October 6, 2015)
_____

OPINION*
_____

SHWARTZ, <u>Circuit Judge</u>.

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Thomas Clay Wade appeals from his firearm and cocaine convictions, contending that the District Court should have granted his request for a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978), and granted the motion to suppress his statements to the police that he claims were tainted by his earlier unlawful detention. We reject these arguments and will affirm.

I

A confidential informant ("CI") informed Pittsburgh police officers that he could buy narcotics at locations in the Lawrenceville, Pennsylvania area, including a house at 3828 Penn Avenue ("the house"), where a man known to the CI as "Spider" resided. Supp. App. 167. The police determined that Spider was Wade.

Officers William Churilla and Kevin Merkal arranged to have the CI make a controlled purchase of crack cocaine from Wade at the house on January 27, 2010. In the presence of both Churilla and Merkal, the CI used his cellular phone to call Wade to arrange the purchase of $50 of cocaine. After the call, the CI told the officers that "Wade told him to hit him up when he got there," which Churilla understood to mean that Wade wanted the CI "[t]o call him when [the CI] was close to [Wade's] house." Supp. App. 174. Churilla then drove the CI to a location near the house, while Merkal separately drove "to a location . . . where he would have an unobstructed view of the residence." Supp. App. 173. According to Churilla, Merkal then saw the CI "get on the phone, make a phone call, [and] get off the phone," and then saw Wade emerge from the house and

2

conduct a transaction with the CI. Supp. App. 176. Merkal testified that he "believe[d] [the CI] made a phone call to let [Wade] know that [the CI] was there," although he was "not sure what happened or if [Wade] answered or not." Supp. App. 246. The substance the CI had purchased from Wade was crack cocaine.

The next day, Churilla obtained a search warrant for the house. The facts set forth in the affidavit were generally consistent with the facts set forth above, although the affidavit did not mention a second phone call between the CI and Wade. Rather, the affidavit stated that "the [CI] never stopped to talk with any one [sic]" while walking from the car to Wade's house, and that "[w]hen the [CI] made his/her way to the corner of 39th and Penn, Officer Merk[a]l saw Thomas Wade exit" the house. Supp. App. 89.

That same day, Churilla and other officers executed the search warrant. Two miles from the house, one officer, David Lincoln, saw Wade riding in the passenger seat of his car. Lincoln contacted Churilla, who told Lincoln to detain Wade. Lincoln pulled over Wade's car approximately 1.5 miles from Wade's house, told Wade to exit the car, patted him down, and told him to wait, claiming that he was checking for outstanding warrants. After approximately fifteen minutes, Churilla informed Lincoln that officers had discovered contraband at the house, and Lincoln arrested Wade.

At the police station, Churilla met with Wade, told Wade he was under arrest, and read him his rights under Miranda v. Arizona, 384 U.S. 436 (1966). Wade signed a written waiver of his rights and agreed to speak to the police without a lawyer. At that

3

point—approximately two hours after Wade's fifteen-minute detention during the execution of the search warrant—Wade confessed to selling crack cocaine from his residence and stated that the shotgun the officers had found there belonged to someone else. Wade also gave the officers his phone number, which was the same number the CI told them Wade used.

A federal grand jury returned a two-count indictment charging Wade with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), and possession with intent to distribute five grams or more of cocaine base, in violation of 21 U.S.C. § 841. Wade moved for a Franks hearing, arguing that Churilla's affidavit omitted information regarding the CI's reliability and that his phone records were inconsistent with the affidavit's description of the CI's communication with Wade. He also moved to suppress his post-arrest, post-Miranda statements, arguing that they were derived from Lincoln's unlawful detention of him while other officers were searching his house.

After an evidentiary hearing, the District Court denied both motions. With respect to the Franks hearing, the District Court found that Wade had failed to make the substantial preliminary showing necessary to be entitled to such a hearing, as nothing Wade presented supported a conclusion that the affidavit was false, and any uncertainty regarding whether the CI called Wade a second time—or whether the CI even existed— could be explained and would not be inconsistent with the phone records Wade provided.

4

With respect to the motion to suppress Wade's statements, the District Court held that Lincoln's detention of Wade during the execution of the warrant to search his home was lawful under Michigan v. Summers, 452 U.S. 692 (1981), and that even if the detention was unlawful, Wade's statements should not be suppressed, as intervening events between the detention and the statements defeated Wade's argument that his statements were "fruit of the poisonous tree." App. 23.

Following the appointment of new counsel and the Supreme Court's limitation of Summers in Bailey v. United States, 133 S. Ct. 1031 (2013), Wade again moved for a Franks hearing and to suppress his statements, and the District Court held an additional hearing and again denied his motions. With respect to the Franks hearing, the District Court again found that Wade "failed to present any evidence beyond speculation and conclusory allegations to show that any specific statement made in the affidavit was false." App. 45. With respect to the suppression of Wade's statements, the District Court noted a change in the law: between its two rulings, the Supreme Court had decided Bailey, which limited law enforcement officers' ability to detain individuals incident to the execution of a search warrant to the immediate vicinity of the premises being searched. Although the District Court concluded (and the Government "appear[ed] to concede") that Lincoln's initial stop of Wade was therefore illegal under Bailey, App. 47, it reiterated its conclusion that Wade's statements were separated from the stop by intervening events and were not fruit of the poisonous tree.

5

Wade proceeded to trial, and a jury convicted him on both counts.  Wade appeals, challenging only the denial of his request for a <u>Franks</u> hearing and the denial of his motion to suppress.

II[1]

A

We first address the District Court's conclusion that Wade was not entitled to a <u>Franks</u> hearing.  In <u>Franks</u>, the Supreme Court held that the Fourth Amendment requires an evidentiary hearing to be held at the defendant's request when: (1) the "defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and" (2) "the allegedly false statement is necessary to the finding of probable cause."  438 U.S. at 155-56.  To make the required substantial preliminary showing, the defendant "cannot rest on mere conclusory allegations . . . but rather must present an offer of proof contradicting the affidavit, including materials such as sworn

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231.  This Court has jurisdiction under 28 U.S.C. § 1291.  "We have not yet identified the standard of review for a district court's denial of a request for a <u>Franks</u> hearing, and our sister circuits are divided on the correct approach."  <u>United States v. Pavulak</u>, 700 F.3d 651, 665-66 (3d Cir. 2012).  We need not resolve this issue here, as the denial of Wade's request for a <u>Franks</u> hearing was appropriate even under de novo review.  <u>See</u> <u>id.</u> at 666 (adopting this approach without deciding what standard of review applies).  On appeal from the denial of a motion to suppress, we review the District Court's factual findings for clear error and its application of law de novo.  <u>United States v. Coles</u>, 437 F.3d 361, 365 (3d Cir. 2006).

affidavits or otherwise reliable statements from witnesses." United States v. Yusuf, 461 F.3d 374, 383 n.8 (3d Cir. 2006).

Here, the District Court correctly denied Wade's request for a Franks hearing, following an extensive "pre-Franks" evidentiary hearing. Wade failed to make any substantial preliminary showing with respect to knowingly or intentionally false statements in Churilla's affidavit. Wade relies extensively on his phone records to support his argument "that a CI never existed and that the controlled buy never occurred," Appellant's Br. 23, but, as the District Court thoroughly explained, these records are in fact consistent with both the affidavit's narrative (the CI called Wade once) and the possibility that the CI called Wade twice, conceivably using two different cell phones. See App. 36 (District Court summarizing records of five different unaccounted-for numbers making four answered and five unanswered calls to Wade's phone during the relevant period). Wade's contention that the affidavit omitted information concerning the CI's unreliability is similarly unpersuasive: the officers corroborated the CI's claim that Wade was a drug dealer by actually witnessing Wade's sale of drugs to the CI. Cf. United States v. Stearn, 597 F.3d 540, 555-58 (3d Cir. 2010) (holding affidavit supported probable cause despite absence of evidence regarding informant's reliability where police

corroborated informant's tip).[2]  Thus, we will not disturb the District Court's order denying Wade a <u>Franks</u> hearing.

B

Wade next contends that the District Court should have suppressed his post-arrest statements, arguing that they were obtained as a result of his unlawful detention during the search of his home.  Evidence obtained as a result of a Fourth Amendment violation ordinarily must be suppressed as "fruit of the poisonous tree."  <u>Wong Sun v. United States</u>, 371 U.S. 471, 487-88 (1963).  Evidence is not fruit of the poisonous tree and need not be suppressed, however, "if the connection between the illegal police conduct and the discovery . . . of the evidence is so attenuated as to dissipate the taint."  <u>United States v. Perez</u>, 280 F.3d 318, 338 (3d Cir. 2002) (internal quotation marks and citation omitted).  <u>Miranda</u> warnings alone do not necessarily render a confession free of the taint of an earlier Fourth Amendment violation.  <u>Brown v. Illinois</u>, 422 U.S. 590, 603 (1975).  Rather, pursuant to <u>Brown</u>, to determine whether this causal connection is sufficiently

_____

[2] Wade also relies on <u>United States v. McMurtrey</u>, 704 F.3d 502 (7th Cir. 2013), to argue that the District Court improperly limited his cross-examination of witnesses at the "pre-<u>Franks</u>" hearing.  <u>McMurtrey</u> is inapposite: there, the Court of Appeals for the Seventh Circuit held that restrictions on cross-examination during a "pre-<u>Franks</u>" hearing were impermissible where the defendant had already made a sufficient showing to be entitled to a full <u>Franks</u> hearing.  704 F.3d at 505.  The court expressly stated that "[t]he [district] court's restrictions on cross-examination would not have mattered if the defendant had not made a sufficient showing to obtain a full <u>Franks</u> hearing."  <u>Id.</u> at 510.  Here, because Wade never made the <u>Franks</u> showing, he was not entitled to a hearing at all, so "any [purported] limits placed upon cross-examination at" the evidentiary hearing he received "are not problematic."  <u>United States v. Taylor</u>, 154 F.3d 675, 680 (7th Cir. 1998).

attenuated, we consider: (1) the temporal proximity between the unlawful conduct and the recovery of the evidence; (2) "the presence of intervening circumstances"; and (3) "particularly, the purpose and flagrancy" of the unlawfulness.  Id. at 603-04; see also United States v. Dupree, 617 F.3d 724, 739 (3d Cir. 2010) (Fisher, J., concurring in the judgment).

Application of these principles here dictates that the District Court's denial of Wade's suppression motion was correct.  Even assuming that his fifteen-minute detention while his home was being searched violated the Fourth Amendment because it occurred beyond "the immediate vicinity of the premises in question," Bailey, 133 S. Ct. at 1042, Wade's subsequent post-Miranda statements were obtained independently of this event and were free of any taint under the Brown factors.  First, at least two hours elapsed between Wade's brief detention and his eventual statements.[3]  Second, intervening circumstances were significant: most notably, officers discovered drugs and a gun in Wade's home and told Wade at the police station that they would be "charging [him] with everything," Supp. App. 269, suggesting that Wade's statements were motivated by

---

[3] Exactly how much time constitutes "temporal proximity" seems to be affected by intervening circumstances that occur during the time between the illegality and the discovery of evidence sought to be suppressed.  See, e.g., Taylor v. Alabama, 457 U.S. 687, 691 (1982) (holding that "a difference of a few hours" between the facts in Taylor and the facts in Brown did not suffice to attenuate the taint where "petitioner was in police custody [following an unlawful arrest], unrepresented by counsel, and he was questioned on several occasions, fingerprinted, and subjected to a lineup").  Regardless, the remainder of the Brown analysis clearly demonstrates that suppression is unwarranted.

his knowledge that officers had discovered his contraband and not fruit of the unlawful detention. Cf. Rawlings v. Kentucky, 448 U.S. 98, 108 (1980) ("Here, where petitioner's admissions were apparently spontaneous reactions to the discovery of his drugs . . . , we have little doubt that this factor weighs heavily in favor of a finding that petitioner acted 'of free will unaffected by the initial illegality.'" (quoting Brown, 422 U.S. at 603)). Third, there is no indication of "flagran[t]" unlawfulness. Brown, 422 U.S. at 604. Indeed, Wade himself concedes that "the official misconduct was slight, and perhaps even in good faith," Appellant's Br. 47, and their conduct was consistent with then-existing Supreme Court precedent permitting detentions incident to the execution of search warrants. Cf. Brown, 422 U.S. at 605 (holding statement was fruit of Fourth Amendment violation where police "illegality . . . had a quality of purposefulness" as "[t]he impropriety of the arrest was obvious" and detectives acknowledged "that the purpose of their action was 'for investigation' or for 'questioning'"). Thus, because the Brown factors weigh in favor of the Government, we will affirm the District Court's denial of Wade's motion to suppress.

III

For the foregoing reasons, we will affirm.