In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-3129

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

COLLET D. WILLIAMS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:05-cr-00714-1—**James B. Zagel**, *Judge.*

ARGUED NOVEMBER 2, 2012—DECIDED MAY 20, 2013

Before MANION, WILLIAMS, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* On April 9, 2004, federal agents and local police executed a search warrant at defendant Collet Williams' residence and found roughly five kilograms of marijuana, a handgun, and several scales. Williams moved to suppress the fruits of this search before trial. Relying on *Franks v. Delaware*, 438 U.S. 154 (1978), Williams argued that the warrant authorizing the search was invalid because the law en-

forcement officers presented the warrant judge with an affidavit that contained false statements and misleading omissions made with at least reckless disregard for the truth. The district court held a *Franks* hearing to test the sufficiency of the warrant. After hearing testimony, the court issued an oral decision finding that the law enforcement officers did not recklessly disregard the truth, and that even if they had, once the errors were removed and the omitted material included, probable cause would have remained for a search warrant to issue.

In the ensuing bench trial, Williams was convicted of being an illegal alien in possession of a firearm in violation of 18 U.S.C. § 922(g)(5). He now appeals the denial of his motion to suppress and asks this court to vacate his conviction. We conclude that the district court did not clearly err in finding that the officers did not deliberately or recklessly mislead the court that issued the warrant. Because this is a sufficient ground to affirm the conviction, we do not reach the question whether the errors were material.

I. *Factual and Procedural Background*

   A. *The Warrant Affidavit*

The story of Williams' arrest begins with Andre Bell. Early in the afternoon of April 9, 2004, agents with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") arrested Bell after he purchased five firearms from an undercover ATF agent. On his way to a police station, Bell made clear that he wanted to cooperate. At

the station he waived his rights and agreed to tell the police what he knew. ATF Agent Labno and several Chicago police officers then interviewed Bell around 2:00 p.m. During the initial interview, Bell told the police that he was planning to resell the guns to Williams in exchange for cash and marijuana. Bell said that Williams was his marijuana supplier and that he regularly purchased between $6,000 and $10,000 of marijuana per week from Williams. His most recent visit to Williams' apartment had occurred three or four days earlier, during which he had observed marijuana and Williams showed him two 9-millimeter handguns. Bell also told the officers that Williams had left for California the day before and would be gone for a few days.

Following the interview, the police attempted to build a case against Williams. Bell placed a series of monitored phone calls to Williams between 3:30 and 5:30 p.m. In these calls, Bell sought to sell the guns to Williams and to arrange for the purchase of ten pounds of marijuana. Williams, who was in fact in California at the time, expressed disappointment that he was not in town to negotiate the purchase of the guns from Bell, but he told Bell his associate could meet Bell at Williams' apartment with the drugs that afternoon. Bell agreed to meet the associate between 5:45 and 6:15 p.m.

The police began preparing an application for a warrant to search Williams' residence before the scheduled deal. The agents transported Bell to Williams' residence so that he could identify the apartment for them and they could further corroborate his account. They

then transported him back to the police station where Officer Korbas was preparing a search warrant affidavit. Officer Korbas then faxed the warrant application to a prosecutor who signed the application and faxed it back to the precinct at 5:00 p.m.

The warrant application was supported by a single affidavit that was signed jointly by both Officer Korbas and Bell. The affidavit stated:

> On 09 Apr 04, I, Dean Korbas, met an individual who wants to cooperate with the police. This individual wishes to remain anonymous. In conversation with this individual, the following was related to me.
>
> I, J. Doe (not my real name) met with police officer Dean Korbas on Friday Apr. 9, 2004 in the afternoon hours. On the date of Apr 8, 2004, I, J. Doe went to the residence located at 8019 S. Saginaw, located in Chicago, Cook County, Illinois. I was admitted into the rear back porch of the second story of the residence by an individual known to me as (COLLETT), whom I have known for six years and been buying "WEED" (street term for cannabis) from him during that time. I followed (COLLETT) to the dining room closet of the residence where, COLLETT removed three pounds of "WEED" that was packaged by the pound in large clear plastic Ziploc bags and exchanged with him $1700.00 U.S.C. As COLLETT was removing the "WEED" I also observed two handguns and additional clear plastic bags containing "WEED" consistent with what I purchased. Fol-

lowing the purchase I then left his residence. Later that evening I smoked a sample of the 'WEED" that I had just purchased from (COLLETT) and this gave me the same feeling of high as in the past purchase of "WEED" from (COLLETT). (COLLETT's) residence was described to Officer Korbas as a two-story residence with red ashfault [sic] shingle siding with a front porch painted white with red trim.

Doe also described the rear of the residence as having white vinyl siding enclosed rear porch with a single stair case leading up to a glass/metal storm door in front of a wooden entry door. The residence also had a detached garage red in color to the east.

. . .

Based on the information supplied to me, Dean Korbas, by J. Doe, I believe there is probable cause to search (COLLETT), as well as the second story residence of 8019 S. Saginaw, Chicago, Cook County, Illinois and respectfully request that a search warrant be issued.

Notably, the affidavit omitted any reference to the monitored telephone calls between Bell and Williams that provided the strongest support for a finding of probable cause.

Because time was of the essence, the police arranged to meet a state judge in a nearby park to swear out the warrant. At approximately 5:00 p.m., Officer Korbas and Bell went to a park located several blocks from the police station and met the judge on a park bench.

(April 9, 2004 was Good Friday.) Officer Korbas remembers nothing about the meeting. Bell remembers that the judge asked him some questions but does not remember what they were. The judge then signed the warrant, and the police proceeded to search Williams' house, where they found the marijuana and scales, as well as the handgun that was the basis for Williams' conviction under § 922(g)(5).

B. *The Franks Hearing*

Before trial, Williams filed a motion to suppress the seized evidence on the ground that the affidavit in support of the warrant was deliberately or recklessly false. The district court granted a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), to examine the truthfulness of the warrant affidavit. Under *Franks*, evidence seized pursuant to a warrant must be suppressed when the defendant shows by a preponderance of the evidence that (1) the affidavit in support of the warrant contains false statements or misleading omissions, (2) the false statements or omissions were made deliberately or with reckless disregard for the truth, and (3) probable cause would not have existed without the false statements and/or omissions. *Franks*, 438 U.S. at 155-56; *United States v. McMurtrey*, 704 F.3d 502, 508 (7th Cir. 2013) (noting extension of *Franks* to deliberately or recklessly deceptive omissions).

Williams contended that the affidavit had three flaws, each of which was necessary to a finding of probable cause. First, the affidavit incorrectly claimed

that Officer Korbas had firsthand knowledge of Bell's account when he really had only secondhand knowledge. Second, the affidavit incorrectly stated that Bell (J. Doe) was last at Williams' apartment on April 8 — the day before Bell was arrested — when Bell had initially told the agents that he was last there three or four days earlier. Third, Williams argued, the affidavit omitted material facts that undermined Bell's credibility. The affidavit neglected to mention that (1) Bell was under arrest for attempting to purchase firearms, (2) Bell had told officers that Williams was in California on the day he allegedly had last visited Williams' apartment, April 8, and (3) Bell had made inconsistent statements about the guns he had seen in the apartment and about when he had last visited Williams' apartment. Williams contends that if all of the omitted information had been included in the affidavit, the judge would not have found probable cause.

Bell, Agent Labno, and Officer Korbas all testified at the *Franks* hearing, and their testimony largely confirmed the claimed errors. First, Officer Korbas did not receive any information directly from Bell. Officer Korbas testified that he was in the room while Bell's interview took place but that he did not speak with Bell and that the search warrant was based on "information that I received that was accurate from the other officers."[1] That testimony was consistent

---

[1] It is unclear from the record whether the interview took place in a closed interrogation room or in a more open office

(continued...)

with Agent Labno's report of the interview, which did not list Officer Korbas as one of the officers in attendance, and with Agent Labno's testimony that the information in the affidavit was provided by "myself, Mr. Bell, basically through our interview."

The court also heard testimony about the decision to include only the April 8 date in the affidavit. Bell testified that he initially told the officers that he was last in Williams' apartment three or four days before April 9. Agent Labno's contemporaneous written summary of his interview with Bell confirms that Bell said he was last at Williams' four days earlier. Agent Labno, however, testified that he continued to question Bell after the initial interview because it was his experience that people often minimize the extent of their criminal conduct. Agent Labno testified that in the later conversation, Bell said that he had actually purchased marijuana from Williams on April 8, the day before Bell's arrest. Agent Labno decided to include only the April 8 date in the affidavit based on the tone of the monitored phone calls that gave him the impression that Williams and Bell had met more recently than four days ago. Agent Labno did not believe that his ability to obtain a warrant depended on Bell having purchased drugs from Williams more recently than four days earlier.

---

[1] (...continued)

space. The district court did not make a factual finding on this question.

Agent Labno also testified about some of the omitted information. Regarding Williams being in California, Agent Labno testified that he was skeptical of this information. He had experience with criminals lying to each other about their whereabouts, so he believed it was possible that Williams was still in Chicago. Concerning the alleged inconsistencies over whether Williams actively showed Bell a gun or whether Bell simply saw a gun and the type of gun Bell saw, Agent Labno considered these alleged inconsistencies to be insignificant. As for the omission of the police's strongest evidence — the monitored phone calls — Agent Labno recalled that the police omitted this information because they did not have time to prepare a full transcript and they wanted to protect the identity of Bell as their informant.

After hearing the evidence, the district court allowed the parties to file further briefs and then denied the motion to suppress in an oral ruling. The district court concluded that the affidavit contained mistakes but found it "difficult to conceive of [the mistakes] in circumstances as representing actual reckless disregard of the truth." The police were assembling a warrant application during a rapidly developing investigation that had to be completed quickly that afternoon. Officer Korbas drafted the warrant in this hurried environment. While there was a good deal of haste, sloppiness, and error in the drafting process, the court found that any errors did not reflect reckless indifference to the truth.

The district court also considered the issue of materiality by subtracting the erroneous information, adding in the omitted information, and determining whether probable cause remained. The court concluded that probable cause remained, noting that "[p]robable cause was corroborated in a variety of other ways," though the court did not specify them. Ultimately, the court concluded that "if you subtract all of the things that were misstated, you would still have probable cause" — though again the court did not say what things it subtracted or what evidence from the affidavit constituted probable cause.

In this appeal, Williams argues that the district court erred in finding that the law enforcement officers did not recklessly disregard the truth and that probable cause would have remained even if the false information had been omitted.

II. *Analysis*

In *Franks v. Delaware*, the Supreme Court held that a criminal defendant is entitled to an evidentiary hearing to examine the sufficiency of a search warrant when the defendant makes a "substantial preliminary showing" that the warrant application contained a materially false statement made by law enforcement with deliberate or reckless disregard for the truth and that the false statement was necessary for the finding of probable cause. *Franks*, 438 U.S. at 155-56; *McMurtrey*, 704 F.3d at 504. Under *Franks*, the evidence recovered from a search must be suppressed if the defendant is able to

prove by a preponderance of the evidence that (1) the affidavit contained material false statements or omissions, (2) these false statements or omissions were made with deliberate or reckless disregard for the truth, and (3) these false statements or omissions were necessary to a finding of probable cause. *Franks*, 438 U.S. at 155-56.

We review the district court's determinations of fact, including the determination of deliberate or reckless disregard for the truth, for clear error. *United States v. Spears*, 673 F.3d 598, 604 (7th Cir. 2012). We will not upset a district court's factual findings unless we are "left with the definite and firm conviction that a mistake has been committed." *United States v. Sauerwein*, 5 F.3d 275, 278 (7th Cir. 1993) (quotations omitted). We review *de novo* questions of law and the question whether the reformed affidavit establishes probable cause. *Spears*, 673 F.3d at 604-05.

An affiant acts with reckless disregard for the truth when he "'in fact entertain[s] serious doubts as to the truth of his allegations.'" *United States v. Lowe*, 516 F.3d 580, 584 (7th Cir. 2008), quoting *United States v. A Residence Located at 218 Third Street*, 805 F.2d 256, 258 (7th Cir. 1986). This is a subjective inquiry that focuses on the officer's state of mind. A showing of reckless disregard requires more than a showing of negligence and may be proved from circumstances showing obvious reasons for the affiant to doubt the truth of the allegations. *McMurtrey*, 704 F.3d at 512. In reviewing for clear error, our task is to determine whether, based

on the totality of the circumstances, it was reasonable for the district court to conclude that law enforcement did not doubt the truth of the affidavit.[2]

To prevail on appeal, Williams must show by a preponderance of the evidence both that the affidavit contained false statements or omissions made with deliberate or reckless disregard for the truth and that without these statements or omissions the remaining affidavit would have been insufficient to establish probable cause. (There is one additional important nuance: because officers must always make deliberate decisions about what to include in and omit from a warrant application, a *Franks* violation based on an omission requires a showing that the material information was omitted deliberately or recklessly *to mislead* the issuing magistrate. See *McMurtrey*, 704 F.3d at 513, citing *United States v. Tate*, 524 F.3d 449, 454-55 (4th Cir. 2008).) The district court found that the law enforcement officers did not act with deliberate or reckless disregard for the truth or with deceptive intent. We may not upset those findings unless we conclude they were clearly erroneous.

---

[2] Although Mr. Bell also signed the affidavit, the issue under *Franks* is whether law enforcement lied or acted with reckless disregard for the truth, not whether others who provided information did so. See *Franks*, 438 U.S. at 171 ("The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant.").

On this record, a reasonable judge could have inferred either that the police acted with reckless disregard for the truth or that their errors and omissions reflected only honest haste and negligence. While we are troubled by the officers' errors, the record does not compel the conclusion that the officers acted with deliberate or reckless disregard for the truth. The police were rushing to draft an application for a warrant and hastily omitted both favorable and unfavorable evidence from the affidavit. The district court in this case inferred no reckless disregard, and that finding was not clearly erroneous. We take particular note of the officers' omission of the information from the monitored calls between Bell and Williams. That information was clearly sufficient to establish probable cause for the warrant, yet it was omitted. That omission provides a reasonable basis to believe that the police did not intend to mislead.

A. *Officer Korbas' Knowledge*

Williams' first argument is that all of the information provided by Bell should be struck from the affidavit because Officer Korbas improperly identified the source of the information. In the affidavit, Officer Korbas swore that Bell provided information directly to him. The *Franks* hearing revealed instead that other officers provided Officer Korbas with all the information. When asked if he participated in the interview with Bell, Officer Korbas responded, "I did not talk to the individual, no." He said that the search warrant was

based on "information that I received . . . from the other officers." These statements show that Officer Korbas made a literally false statement in the warrant. He did not receive the information included in the warrant affidavit directly from Bell, as he swore in the affidavit. Yet a false statement must be made deliberately or with reckless disregard for the truth to require exclusion from the probable cause determination under *Franks*.

Williams argues that Officer Korbas' false statement was necessarily made deliberately or with reckless disregard for the truth. Officer Korbas consciously knew both that he did not speak to Bell and that he claimed in the warrant affidavit that he had a direct conversation with Bell. Because it is impossible for Officer Korbas to have had a conversation with someone he never spoke with, Officer Korbas therefore could not have believed he was providing truthful information when he swore in the affidavit that he had talked with Bell. Q.E.D.

This argument is supported by *United States v. Davis*, 714 F.2d 896 (9th Cir. 1983), in which the Ninth Circuit invalidated a warrant based on an affidavit falsely identifying the source of information. The facts of *Davis* are remarkably similar to this case. There an officer submitted a search warrant affidavit swearing that he had personal knowledge of the facts stated. In truth, the officer had personal knowledge of only some of the facts; the other facts he learned from other members of the investigation. When questioned about

the affidavit after the search, the officer said that he realized after typing the affidavit that he did not have personal knowledge of all the facts he claimed. Nevertheless, he submitted the affidavit because he was told that this misstatement did not matter as long as he was aware of all the information in the affidavit. *Id*. at 899. The district court had concluded that this was simply an inadvertent error, but the Ninth Circuit reversed, reasoning that the statement was deliberately or recklessly false because the officer knew it to be false when he signed it. *Id*.

We do not disagree with this reasoning; however, it is not equally clear that Officer Korbas was similarly aware of his mistake when he signed the affidavit. We conclude that it was not clearly erroneous for the district court to reach the opposite conclusion from the Ninth Circuit in *Davis* on these facts. Officer Korbas prepared the warrant during a fast-paced investigation. There is evidence in the record that he was present in the interview room for at least portions of the interview with Bell. And it is possible that he began drafting the affidavit assuming he would receive all of his information from Bell and then, in the haste of the investigation, failed to revise the warrant to reflect that the information came from other officers. There is no evidence that Officer Korbas, like the officer in *Davis*, recognized his mistake when there was still time to fix it yet decided to include it in the affidavit anyway.

The conclusion that Officer Korbas' false statement — along with the other problems with the affidavit — was

more likely negligent than reckless is further supported by the strong evidence the police omitted from the affidavit. Evidence from the *Franks* hearing shows that the police had good reason to believe there were drugs at Williams' residence. Williams told Bell in a monitored telephone call that ten pounds of marijuana were on the way to his apartment. The police omitted this information in part because they had to prepare the warrant with great haste, so much so that they arranged a park bench meeting with a judge late on Good Friday afternoon in a scene reminiscent of a fictional police procedural.

It is true that the monitored telephone call may not be considered in the probable cause determination itself because it was omitted from the warrant affidavit. See *United States v. Harris*, 464 F.3d 733, 739 (7th Cir. 2006). Yet this information supports the reasonableness of the district court's conclusion that Officer Korbas acted with hasty negligence rather than reckless disregard for the truth. The fact that time pressure led the police to exclude both significantly favorable and unfavorable evidence from the warrant application supports the inference that the police acted negligently rather than recklessly or deceptively. The district court did not clearly err in concluding that Officer Korbas did not deliberately or recklessly disregard the truth.

B.  *April 8 Drug Buy*

Next Williams argues that the reference to the April 8 drug buy in the affidavit was false and was included

by police with reckless disregard for the truth. In support of this claim, Williams points to the facts that Bell initially said he was last at Williams' apartment three or four days prior and that Williams had left for California on the 8th. If the police knew that Williams was in California on the 8th, then they could not have believed that Bell bought drugs from Williams in Chicago that same day. On this record, it is not clear that the police actually believed Williams was in California, so we conclude that the district court did not clearly err in finding that the police did not recklessly disregard the truth.

The April 8 date came from a conversation Agent Labno testified he had with Bell after Bell's formal interview. Since Agent Labno, a fellow law enforcement officer, relayed this information to Officer Korbas for inclusion in the warrant, the inquiry into reckless disregard properly focuses on Agent Labno's state of mind. See *United States v. Whitley*, 249 F.3d 614, 621 (7th Cir. 2001) (explaining *Franks* inquiry properly includes states of mind of government agents from whom affiant receives information). If we were to focus only on the affiant Korbas' knowledge, police would be able to shield false information in affidavits from review simply by providing secondhand information to the drafting affiant.

Based on the testimony at the *Franks* hearing, though, it is not clear that Agent Labno intentionally or recklessly provided Officer Korbas with false information. At the *Franks* hearing, Bell confirmed that he provided the

officers with inconsistent statements about when he was last at Williams' residence. Agent Labno testified that he included the April 8 date because it was the date he believed to be "true and accurate" based on the tone of the monitored phone call Bell had with Williams. Agent Labno also testified that his experience with criminals lying to each other made him skeptical that Williams was in fact in California, so he did not believe that an April 8 meeting was impossible. Once Bell told Agent Labno that he met Williams on April 8, the district court could reasonably find that Agent Labno believed that Bell had actually met Williams on April 8.

Perhaps most important, Agent Labno does not appear to have had a motive to misrepresent the date. Agent Labno was a party to the monitored telephone calls and knew that Williams was organizing a drug deal at his apartment for that afternoon. This was clear evidence of probable cause that would have provided more than an adequate basis for a search warrant. Agent Labno did not believe the date mattered for a finding of probable cause, suggesting that he had no motive to include in the warrant affidavit a date he doubted. Agent Labno testified that he believed either date would have been sufficient to get a warrant and that he did not choose the more recent date to "freshen up" the probable cause. As it turned out, Agent Labno was wrong in his choice, and he was wrong not to include the inconsistency in the affidavit, but it was not clearly erroneous for the district court to conclude that Agent Labno did not make this mistake with reckless disregard for the truth.

C. *Omissions*

Williams also argues that the officers omitted several pieces of material information from the affidavit with reckless disregard for the issuing judge's ability to assess the evidence accurately. Specifically, the affidavit did not state the following: (1) Bell was currently under arrest for illegally buying firearms; (2) Williams was in California; or (3) Bell made inconsistent statements about the guns he saw in Williams' apartment and when he had last seen drugs in Williams' apartment. These omissions gave the false impression that Bell made consistent statements to the police and that there were no reasons to doubt his credibility. Williams contends that the statements were omitted with reckless disregard for the truth because experienced law enforcement officers know that "omitting facts that [would give] significant reasons to doubt Mr. Bell's truthfulness would provide the magistrate with an inaccurate impression of Mr. Bell and the information he provided." We take each alleged omission in turn.

We begin with the omission of Bell's arrest. It is clear that the police should have mentioned in the affidavit that Bell was under arrest for illegally purchasing firearms. This information bore directly on Bell's credibility. *E.g., United States v. Simmons*, 771 F. Supp. 2d 908, 918-20 (N.D. Ill. 2011) (explaining that fact of arrest is important for probable cause determination and that proper way to put judge on notice is to indicate this in affidavit). Bell was looking to secure a reduced sentence

by cooperating with the police and may have been willing to lie to appear to be cooperating fully.

It is not clear, however, that the omission of this information was deliberately or recklessly deceptive. The affidavit noted that Bell had been buying marijuana from Williams for six years and that he had purchased three pounds of marijuana the previous week. While the affidavit did not say that Bell was under arrest, the statements about the significant recent drug purchases could easily be read as giving the impression that the police were not trying to hide the fact that Bell was currently in trouble with the law. Moreover, Bell was brought by a police officer to see the issuing judge face-to-face. As the district judge commented, that step provided the issuing judge with an opportunity to learn more about Bell's status and credibility. On this record, the district court was not required to find that the police deliberately or recklessly deceived the judge by omitting the fact of Bell's arrest.

The exclusion of information about Williams being in California was also not clearly made with reckless disregard for the truth or deceptive intent. At the *Franks* hearing, Agent Labno testified that he believed it possible that Williams had lied to Bell about his whereabouts and that Williams was actually still in Chicago. In the context of the rapidly developing investigation, Bell's statement that Williams was in California was far from indisputable proof of this fact. Agent Labno's experience led him to question the information Williams provided to Bell, and in making this judg-

ment, he did not disregard more probative evidence that might have existed but of which he was not aware, such as a flight itinerary or an eyewitness placing Williams in California. On these facts, it was not unreasonable for the district court to conclude that Agent Labno did not entertain serious doubts that he was excluding material information from the warrant.

Finally, the district court did not clearly err by finding that the officers' decision to exclude inconsistent statements about the guns and when Bell had last been at Williams' apartment did not recklessly disregard the truth. The inconsistencies concerning the guns appear to be immaterial in the end. In Bell's interview with police, he reported seeing two 9-millimeter pistols in Williams' closet. In the monitored phone call between Williams and Bell, Williams told Bell he had seen a .40-caliber pistol, not a 9-millimeter. The difference between a .40-caliber and a 9-millimeter pistol is only one millimeter in barrel diameter. It is not as if Bell told police he had seen a 12-gauge shotgun at Williams' apartment and Williams later denied having a shotgun. A 9-millimeter and .40-caliber pistol are so close in size that it is not difficult to believe someone could mistake the two. The content of the phone call was also vague enough to make it unclear whether there was actually an inconsistency about the number or type of guns Bell had seen and whether Williams actually presented the guns to Bell. There is no evidence that the monitored conversation caused the officers to question whether Bell in fact saw a gun in Williams' apartment. The officers did not act to mislead

the issuing judge by omitting these details regarding the number and type of guns.

The omission of the inconsistency concerning when Bell was last at Williams' apartment is more significant, but we have already concluded that it was not clear evidence of reckless disregard for the truth for the officers to include only the April 8 date in the affidavit. Rather, many of the omitted facts, especially the information gained from the monitored calls that would have supported probable cause, provided reasonable support for the district court's finding that the officers' mistakes were the product of time and negligent haste rather than reckless disregard for the truth.

III. *Conclusion*

The preparation of the warrant affidavit in this case put this investigation and prosecution at serious risk. The officers in this investigation presented the warrant judge with a sanitized affidavit that made an independent determination of probable cause more difficult than it should have been. The officers made decisions about which way inconsistencies should be resolved and whether contradictory information should be provided to the judge rather than presenting this information to the judge to assess. It is the job of the issuing judge, and not the police, to weigh competing information and to decide how inconsistencies affect the probable cause determination. When police make decisions about what information to provide judges, the idea of an independent, detached magistrate

reviewing the evidence is compromised, and the constitutional command that "no Warrants shall issue, but upon probable cause" is weakened.

On this record, the district court might have reasonably found that the errors and omissions in the warrant application were the product of deliberate deception or reckless disregard for the truth. The district court found otherwise here. Our decision to affirm the district court's judgment is governed by the clearly erroneous standard of review. Based on the totality of the circumstances in this case, including the favorable but omitted evidence of the telephone calls, the district court did not clearly err by finding that the police were not acting with reckless disregard for the truth in making their mistakes and failing to include the inconsistent information. The denial of the motion to suppress and the district court's judgment are AFFIRMED.