*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

TIARA ANTOINETTE WILBURN,

Defendant-Appellant.

UNPUBLISHED
April 28, 2022

No. 359224
Berrien Circuit Court
LC No. 2021-000524-FH

Before: CAMERON, P.J., and CAVANAGH and GADOLA, JJ.

PER CURIAM.

Defendant Tiara Antoinette Wilburn appeals the trial court's denial of her motion to suppress evidence. We reverse the trial court's decision to deny defendant's motion to suppress physical evidence, decline to rule on the issue of whether defendant's statements to law enforcement should be suppressed, and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

On January 5, 2021, a confidential informant contacted Detective Jeremiah Gauthier, a member of the Michigan State Police Southwest Enforcement Team (SWET), about "an alleged drug house" in Benton Township, Michigan. Specifically, the confidential informant indicated that there were "drugs being sold out of" a house on Berg Avenue. The confidential informant agreed to go to the house and "try to help with obtaining the probable cause for a search warrant." After the confidential informant went to the house that afternoon, he or she advised Detective Gauthier of the exact address. The confidential informant also indicated that "there was a female and a larger black male at that residence with a quantity of [cocaine] and some other drug paraphernalia," including a scale. The confidential informant also saw "US currency" "in close proximity" to the scale. The confidential informant did not participate in a controlled buy.

Detective Gauthier provided the address to Michael Fry, an analyst for the Michigan Intelligence Operations Center. Fry determined that defendant and a man named Vanzel Joseph were associated with the address, and Fry provided Detective Gauthier with photographs of defendant and Joseph. Detective Gauthier located two photographs of the home through Google

Maps, and he text messaged all of the photographs to the confidential informant. When asked, "Are these the two people at the house and is that the house???," the confidential informant responded "1000%" and then referenced someone's "street name."

Detective Gauthier contacted Detective Jessica Frucci and provided her with the information "in the hopes that" she would draft a search warrant affidavit. Detective Gauthier testified that he contacted Detective Frucci because he was "already busy with a few other cases" and because Detective Frucci was new to SWET and needed experience with drafting search warrant affidavits. After Detective Frucci completed the affidavit, two other detectives reviewed it. Detective Gauthier did not review the search warrant. Detective Frucci then presented the affidavit to a Berrien Circuit Court Judge, who issued the warrant at 10:55 p.m. on January 5, 2021.

Less than an hour later, law enforcement officers assigned to SWET, including Detective Gauthier and Detective Frucci, executed the search warrant. Defendant was in the house, but Joseph was not. The only item seized from the house was a digital scale that was caked with white residue, later identified as cocaine, and defendant admitted to law enforcement that she had been selling crack cocaine out of the home. Defendant was charged with possession of less than 25 grams of cocaine, MCL 333.7403(2)(a)(*v*), and with maintaining a drug house, MCL 333.7405(1)(d).

Before trial, defendant moved the trial court to suppress the evidence seized under the search warrant and her statements to law enforcement. Defendant argued that the warrant should not have been issued because the affidavit supporting the warrant was deficient and contained false information. The prosecutor conceded that the affidavit contained some false information, but characterized the inaccuracies as innocent misrepresentations that were negligently made because of Detective Frucci's inexperience. The prosecutor also argued that "the good-faith exception to the exclusionary rule would bar suppression of any evidence."

The trial court conducted a *Franks*[1] hearing over the course of several days. Detective Gauthier and Detective Frucci testified. Detective Frucci acknowledged that there were multiple false statements in the affidavit, but she testified that she did not notice them until they were brought to her attention by the prosecutor. At the close of proofs, the trial court denied defendant's motion to suppress. Specifically, the trial court ruled that there was "no showing of [Detective Frucci] intentionally providing false information in the affidavit" and noted that Detective Frucci testified that she had "no doubts in her mind that the information that she was supplying to the judge or magistrate was accurate." The trial court also concluded that it was proper to apply the good-faith exception to the exclusionary rule given that there was "no evidence of bad faith or intent to deceive [the issuing judge]. . . ."

Defendant filed an interlocutory application for leave to appeal the trial court's decision and this Court granted leave. *People v Wilburn*, unpublished order of the Court of Appeals, entered November 23, 2021 (Docket No. 359224).

---

[1] *Franks v Delaware*, 438 US 154; 98 S Ct 2674; 57 L Ed 2d 667 (1978).

## II. STANDARDS OF REVIEW

"We review [preserved] issues of constitutional law de novo." *People v Benton*, 294 Mich App 191, 203; 817 NW2d 599 (2011). Additionally,

> [t]his Court reviews for clear error a trial court's factual findings in a ruling on a motion to suppress evidence. A trial court's factual findings are clearly erroneous when this Court is left with a definite and firm conviction that the trial court made a mistake. The decision whether to admit [or exclude] evidence is within a trial court's discretion. . . . A trial court abuses its discretion when it selects an outcome that falls outside the range of reasonable and principled outcomes. To the extent that a trial court's ruling on a motion to suppress involves an interpretation of the law or the application of a constitutional standard to uncontested facts, our review is de novo. [*People v Clark*, 330 Mich App 392, 415; 948 NW2d 604 (2019) (quotation marks and citations omitted).]

## III. THE SEARCH WARRANT

Defendant argues that the trial court clearly erred by finding that Detective Frucci did not intentionally or recklessly misrepresent material facts in the affidavit and that the trial court abused its discretion by denying the motion to suppress. We agree in part.

## A. RELEVANT AUTHORITY

"It is well settled that both the United States Constitution and the Michigan Constitution guarantee the right of persons to be secure against unreasonable searches and seizures. A search or seizure is considered unreasonable when it is conducted pursuant to an invalid warrant. . . ." *People v Hellstrom*, 264 Mich App 187, 192; 690 NW2d 293 (2004) (quotation marks and citations omitted). Warrants must be based on probable cause, which "exists where there is a substantial basis for inferring a fair probability that contraband or evidence of a crime will be found in a particular place." *Id*. (quotation marks and citation omitted).

"When probable cause is averred in an affidavit, the affidavit must contain facts within the knowledge of the affiant rather than mere conclusions or beliefs." *People v Waclawski*, 286 Mich App 634, 698; 780 NW2d 321 (2009). Moreover, "[t]he affiant may not draw his or her own inferences, but must state the matters that justify the drawing of inferences." *Id*. Additionally, MCL 780.653(b) applies to determinations of probable cause when the affidavit contains information supplied to the affiant by an unnamed person. This statutory provision requires that the affidavit contain "affirmative allegations from which the judge or district magistrate may conclude that the person spoke with personal knowledge of the information and either that the unnamed person is credible or that the information is reliable." MCL 780.653(b). "An affiant's representations based on his [or her] experience can be considered in determining whether probable cause exists." *Hellstrom*, 264 Mich App at 199 n 7.

False statements may not be used to support a finding of probable cause. *People v Stumpf*, 196 Mich App 218, 224; 492 NW2d 795 (1992). Under *Franks v Delaware*, 438 US 154, 156; 98 S Ct 2674; 57 L Ed 2d 667 (1978), if an "allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence" and the "remaining content [in the affidavit]

is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit."

Although the *Franks* Court held that a search warrant can be invalidated if an affiant made materially false assertions with a reckless disregard for the truth, the United States Supreme Court has not defined "reckless disregard for the truth" in the context of criminal proceedings. Most federal circuit courts have adopted a subjective test for recklessness similar to that used in First Amendment defamation cases.[2] In First Amendment defamation cases, "reckless conduct is not measured by [a reasonably prudent man standard]." *St Amant v Thompson*, 390 US 727, 731; 88 S Ct 1323; 20 L Ed 2d 262 (1968). Instead, "[t]here must be sufficient evidence to permit the conclusion that the [affiant] in fact entertained serious doubts as to the truth [of the statements]." *Id*. In *US v Williams*, 718 F3d 644, 650 (CA 7, 2013), the United States Court of Appeals for the Seventh Circuit applied the following standard:

> An affiant acts with reckless disregard for the truth when he [or she] in fact entertain[s] serious doubts as to the truth of his [or her] allegations. This is a subjective inquiry that focuses on the officer's state of mind. A showing of reckless disregard requires more than a showing of negligence and may be proved from circumstances showing obvious reasons for the affiant to doubt the truth of the allegations. [Second alteration in original; quotation marks and citations omitted.]

We conclude that the standard articulated in *Williams* is the proper standard. Indeed, the standard is consistent with Michigan case law concerning First Amendment defamation. See *Smith v Anonymous Joint Enterprise*, 487 Mich 102, 115-116; 793 NW2d 533 (2010). Therefore, we adopt it as the proper standard for Michigan courts to apply when determining whether an affiant acted with a reckless disregard for the truth.

## B. ANALYSIS

In this case, Detective Frucci was the affiant for the affidavit, which stated in relevant part:

> Your Affiant is Detective with the Berrien County Sheriff's Department currently assigned to a multijurisdictional taskforce known as the Southwest Enforcement Team (SWET). Your Affiant has nine (9) years of police experience. Your Affiant has received specialized training in drug enforcement investigations. Your Affiant has also participated in the investigation, planning, serving, and

---

[2] *US v Ranney*, 298 F3d 74, 78 (CA 1, 2002) ("To prove reckless disregard for the truth, the defendant must prove that the affiant in fact entertained serious doubts as to the truth of the allegation.") (quotation marks and citation omitted); *US v Rajaratnam*, 719 F3d 139, 154-155 (CA 2, 2013) (applying the subjective standard for reckless disregard for the truth); *US v Brown*, 631 F3d 638 (CA 3, 2011) (same); *Unus v Kane*, 565 F3d 103, 124-125 (CA 4, 2009) (same); *US v Cican*, 63 Fed Appx 832, 835-836 (CA 6, 2003) (same); *US v Williams*, 718 F3d 644, 650 (CA 7, 2013) (same); *US v Conant*, 799 F3d 1195, 1200-1201 (CA 8, 2015) (same); *US v Comer*, 565 Fed Appx 729, 732-733 (CA 10, 2014) (same).

executing of narcotics related search warrants. Your Affiant has also worked in an undercover capacity in the purchasing of controlled substances.

Within the past forty-eight hours, members of SWET-West have investigated the place to be searched. During this investigation, a confidential police informant (hereinafter referred to as a CI) was used.

On January 04, 2021 [sic], a credible confidential informant (CI) of the South West Enforcement Team (SWET-West) contacted Your Affiant in regard to illegal narcotics activity occurring at [a home on] Berg Avenue in Benton Township. CI advised that within the past twenty-four (24) to forty-eight (48) hours a black male that resides at this residence is selling crack cocaine from the residence. CI stated while at the residence CI observed crack cocaine, [a] scale, and money (US currency). CI has experience in the sale and distribution of narcotics specifically crack cocaine. The CI saw approximately one ounce of crack cocaine in close proximity to a small scale commonly used to weigh narcotics. The CI stated the scale and crack was in close proximity to the money.

Your Affiant showed . . . Joseph['s] Michigan driver's license photo to the CI and the CI confirmed that the person selling crack cocaine from [the home on] Berg Avenue was . . . Joseph. Your Affiant did a LEIN check for . . . Joseph which showed [that he] has narcotics convictions from the Second Circuit Ct on 11/03/13 and 01/23/14.

Based on Your Affiants [sic] police experience and training, it is known that subjects that distribute illegal narcotics will often keep the narcotics at a residence. Subjects that distribute illegal narcotics will keep narcotics in close proximity to where they live or stay so these subjects can have quick and easy access to the narcotics. Subjects that deal narcotics also keep the narcotics at their residence or where they stay because they are familiar with the residence and know tat [sic] the narcotics will not be tampered with by anyone else but themselves.

(CREDIBILITY OF CI)

The CI that provided this information to SWET-West has been a CI with SWET-West for approximately twelve month [sic]. The CI has also provided members of SWET-West with several pieces of information regarding illegal criminal and narcotic activity in the County of Berrien, which members of SWET-West verified and no false or misleading information has been forwarded to SWET-West by the CI. CI has additionally provided information in the past which has led SWET-West to seizures which have included but not limited to large sums of money, drugs, and firearms.

Detective Gauthier testified that the confidential informant contacted him on January 5, 2021. Although the affidavit indicates that Detective Frucci communicated with the confidential informant, both Detective Gauthier and Detective Frucci testified at the *Franks* hearing that only Detective Gauthier communicated with the confidential informant. Consequently, the affidavit

falsely states that Detective Frucci communicated with the confidential informant in relation to the investigation.

The affidavit also falsely states that Detective Frucci had "specialized training in drug enforcement and investigations," had "worked in an undercover capacity in the purchasing of controlled substances," and that, based on her experience and training, "it is known that subjects that distribute illegal narcotics will often keep the narcotics at a residence." While Detective Frucci had nine years of experience as a police officer when she drafted the affidavit, she conceded at the *Franks* hearing that she did not have "specialized training in drug enforcement and investigations." Instead, Detective Frucci acknowledged that she had only "basic . . . law enforcement" training. When asked if she had received "[a]ny additional training since then," Detective Frucci responded "No." At the time she drafted the affidavit, Detective Frucci had only been with SWET for two months. Detective Gauthier testified that he had asked Detective Frucci to draft the affidavit because she was new to SWET and because "she did not have . . . a lot of cases going and was looking to get experience in running some cases. . . ." Contrary to the prosecutor's arguments on appeal, there is simply no evidence in the record to support that Detective Frucci had "specialized training in drug enforcement and investigations," including undercover investigations. Thus, the affidavit contains false information about Detective Frucci's experience.

Although Detective Frucci testified that she did not intentionally include false information in the affidavit and the trial court found this testimony to be credible, we conclude that Detective Frucci recklessly included false information in the affidavit. Importantly, Detective Frucci testified that she typed the affidavit, that she reviewed the affidavit after she typed it, and that she read the affidavit over the phone to the judge who issued the warrant. This required Detective Frucci to indicate out loud that she had personal knowledge and experience that she plainly did not have. Indeed, the line below Detective Frucci's signature on the affidavit indicated that she was the "Affiant," a word that Detective Frucci later explained at the *Franks* hearing that she understood.

Given the amount of time that Detective Frucci spent drafting and reviewing the affidavit, we conclude that the errors amounted to more than mere negligence and that the circumstances show obvious reasons for Detective Frucci to doubt the truth of the allegations. Indeed, Detective Frucci was well aware of her work experience and that she had not communicated with the confidential informant. While Detective Frucci testified that she felt "internal" pressure to complete the affidavit so that a warrant could be executed quickly, this is not a situation where Detective Frucci lacked the opportunity to notice the false statements in the affidavit. Cf. *Williams*, 718 F3d 650-651 (concluding that an officer did not "act with deliberate or reckless disregard for the truth or with deceptive intent" where "[t]here [was] no evidence that [the officer] . . . recognized his mistake when there was still time to fix it. . . .").

Setting aside the affidavit's false allegations, we conclude that the affidavit's remaining content is insufficient to establish probable cause. Probable cause in this case was based almost exclusively on the statements that the confidential informant made to Detective Gauthier. Detective Frucci could have indicated in the affidavit that she was relying on the facts learned from Detective Gauthier in order to support a finding of probable cause, *US v Davis*, 714 F2d 896, 899 (CA 9, 1983); *People v Mackey*, 121 Mich App 748, 753-754; 329 NW2d 476 (1982), but

Detective Frucci did not do so.[3]  Because Detective Frucci falsely identified the source of the information concerning the confidential informant and misrepresented her experience as a police officer, it was impossible for the judge to properly evaluate the existence of probable cause.  See *US v Ventresca*, 380 US 102, 108-109; 85 S Ct 741; 13 L Ed 2d 684 (1965) (noting the importance of providing "some of the underlying circumstances" in order for "the magistrate . . . to perform his [or her] detached function").  See also *Mackey*, 121 Mich App at 754 (an affiant has an "obligation to inform the magistrate of the fact that he [or she] received . . . information from a fellow officer and of his [or her] reason or reasons for finding the information reliable" so that the magistrate can evaluate whether probable cause exists).  Consequently, "the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit."  See *Franks*, 438 US at 156.[4]  In so holding, we recognize that this is a remedy that should be resorted to rarely.  See *Herring v United States*, 555 US 135, 140; 129 S Ct 695; 172 L Ed 2d 496 (2009) ("exclusion has always been our last resort, not our first impulse, and our precedents establish important principles that constrain application of the exclusionary rule") (quotation marks and citation omitted).

In so holding, we do not reach the issue of whether it is proper to suppress defendant's statements to law enforcement concerning her sale of crack cocaine from the house because the circumstances surrounding the statements are unclear from the record.[5]  In the event that it is necessary, the trial court shall consider this issue on remand.

## IV.  EXCLUSIONARY RULE

We note that the trial court concluded that the good-faith exception to the exclusionary rule would apply even if material misstatements were made in the affidavit.  This was in error.  As observed in *People v Czuprynski*, 325 Mich App 449, 472; 926 NW2d 282 (2018),

> [r]eliance on a warrant is reasonable even if the warrant is later invalidated for lack of probable cause, except under three circumstances: (1) if the issuing magistrate or judge is misled by information in the affidavit that the affiant either knew was false or would have known was false except for his or her reckless disregard of the truth; (2) if the issuing judge or magistrate wholly abandons his or her judicial role; or (3) if an officer relies on a warrant based on a "bare bones" affidavit so lacking

---

[3] Detective Frucci also could have asked Detective Gauthier to review and sign the affidavit.  Had Detective Gauthier signed the affidavit, the search warrant would have been valid.  Detective Gauthier had extensive experience with narcotics investigations, had a positive history with the confidential informant, and communicated directly with the confidential informant on January 5, 2021.  Detective Gauthier also confirmed that the information contained in the affidavit was "consistent with the information provided to [him] by the confidential informant."

[4] Defendant argues that the affidavit contained other false information; however, given our holding, it is unnecessary to consider these additional arguments.

[5] The complaint and warrant only indicate that, "[d]uring an interview under Miranda, [defendant] admitted to having been selling crack cocaine from her residence recently."  Defendant purportedly waived her rights under *Miranda* before providing the statement.

in indicia of probable cause as to render official belief in its existence entirely unreasonable.  [Citation omitted.]

Because the affidavit in this case contained material misinformation that was recklessly included by Detective Frucci, the good-faith exception to the exclusionary rule does not apply.  See *id*.  See also *People v Goldston*, 470 Mich 523, 531; 628 NW2d 479 (2004) ("Evidence should . . . be suppressed if the issuing magistrate or judge is misled by information in the affidavit that the affiant either knew was false or would have known was false except for his reckless disregard of the truth.").

We reverse the trial court's decision to deny defendant's motion to suppress the physical evidence, decline to rule on the issue of whether defendant's statements should be suppressed, and remand for further proceedings consistent with this opinion.  We do not retain jurisdiction.

/s/ Thomas C. Cameron
/s/ Mark J. Cavanagh
/s/ Michael F. Gadola